UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------)
In re:                                                 )          Chapter 15 Case No. 07-12383 (BRL)
                                                       )
BEAR STEARNS HIGH-GRADE                                 )
STRUCTURED CREDIT STRATEGIES                            )
MASTER FUNDS, LTD.                                      )          Civil Case No. 07-8730 (RWS)
(IN PROVISIONAL LIQUIDATION)                            )
                                                       )
Debtor in a Foreign Proceeding and                     )
        Appellant.                                     )
                                                       )
-------------------------------------------------------)
                                                       )
In re:                                                 )          Chapter 15 Case No. 07-12384 (BRL)
                                                       )
BEAR STEARNS HIGH-GRADE                                 )
STRUCTURED CREDIT STRATEGIES                            )
ENHANCED LEVERAGE MASTER                                )          Civil Case No. 07-8746 (RWS)
FUND, LTD.                                              )
(IN PROVISIONAL LIQUIDATION)                            )
                                                       )
Debtor in a Foreign Proceeding and                     )
        Appellant.                                     )
-------------------------------------------------------)

**BRIEF OF THE ELECTED REPRESENTATIVES
OF BEAR STEARNS HIGH-GRADE STRUCTURED
CREDIT STRATEGIES ENHANCED LEVERAGE
FUND, LTD. (IN PROVISIONAL LIQUIDATION), AMICI CURIAE**

Reed Smith, LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
Counsel for Amici Curiae,
Bart Schwartz and FTI Capital Advisors, LLC

## I.     __INTRODUCTION__

This is an appeal filed by Simon Lovell Clayton Whicker and Kristen Beighton (the "Foreign Liquidators") from the Amended Decision and Order Denying Recognition of Foreign Proceeding (the "Order") entered by the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").  That Order denied the recognition of the foreign liquidation of the Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund, Ltd. (the "Master Fund").

This brief is filed by Bart Schwartz, the former Chief of the Criminal Division of the U.S. Attorney's Office for the Southern District of New York, and FTI Capital Advisors, LLC, which is a FINRA-registered broker/dealer, and a wholly-owned subsidiary of the forensic accounting and financial investigations firm FTI Consulting, Inc. (collectively, the "Elected Representatives").  The Elected Representatives are the recently elected sole directors of the Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (the "Overseas Feeder Fund"), a "feeder fund which had a contractual relationship with [Master] Fund's sole investor."  Appellants' Opening Brief p.7, fn 6.  The overnight crash of the Overseas Feeder Fund from approximately $600 million in value to zero this summer shook the financial market in its entirety.

As stated more fully below, the overriding objective of the Elected Representatives is to examine the affairs of the Overseas Feeder Fund and its counterparties, including the Master Fund, in order to maximize any potential recovery for the shareholders of the Overseas Feeder Fund for their lost investments.

The conduct of the Master Fund and of Bear Stearns Asset Management, Inc. ("BSAM"), in its capacity as an agent and investment manager of the Master Fund and the Overseas Feeder Fund, in, *inter alia*, (a) filing certain liquidations proceedings in the Cayman Islands, (b) filing

the instant chapter 15 petitions, and (c) taking additional actions subsequent thereto as detailed more fully herein, has been calculated to cause disruption, frustration and delay for the Elected Representatives, and could threaten to deprive the shareholders of their rights to a day in court.

The purpose of this amicus curiae brief by the Elected Representatives is to support affirmance of the Order by, *inter alia*, highlighting the damage that the recognition of the Master Fund's Cayman liquidation proceedings will have on the shareholders of the Overseas Feeder Fund.

## II.   PRELIMINARY STATEMENT

The Elected Representatives adopt the Brief of Amici Curiae filed by Professors Westbrook, *et al.*, and will refrain from reiterating the scholarly and compelling arguments made therein.

The Elected Representatives note, however, that earlier this year, this Court set forth the principle that should inform its analysis and decision on this appeal.   In <u>In re Sphinx Ltd.</u>, 371 BR 10 (S.D.N.Y. 2007), the Court, in affirming the Bankruptcy Court's denial of recognition of another Cayman liquidation as a foreign main proceeding under Chapter 15, held:

> . . . it was appropriate for the Bankruptcy Court to . . . retain its flexibility and to reach a pragmatic resolution supported by the facts found.

<u>Id</u>. at 18.

Although in <u>Sphinx</u> the Bankruptcy Court recognized the foreign liquidation as a non-main proceeding, the propriety *vel non* of that determination was not raised on appeal.   But the key, soundly reasoned, point of <u>Sphinx</u> is that a recognition order should not be routinely issued, nor should recognition issues be considered in a vacuum, but with due regard to real world considerations.   Accordingly, the policy grounded arguments so eloquently advanced by

Professors Westbrook, *et al*., should be reviewed within the context of related and subsequent developments, all of which serve to confirm that the Bankruptcy Court's decision was correct.

## III.    STANDARD OF REVIEW

The Elected Representatives subscribe to the standard of review set forth in Appellants' Opening Brief.

## IV.    SUPPLEMENTAL STATEMENT OF FACTS

### A.    General Background

The Overseas Feeder Fund was incorporated on April 27, 2006, as a Cayman Islands exempted company.  It invested substantially all its assets synthetically through a leverage instrument in the Master Fund, a company formed to conduct trading activities on behalf of the Overseas Feeder Fund and other entities managed by BSAM or its affiliates.

On or about July 18, 2007, the Overseas Feeder Fund informed investors in writing that its losses were catastrophic, and that all equity value had been lost.  See *Affidavit of Lance Gotthoffer* (the "Gotthoffer Affidavit"), filed in Cause No. 551 of 2007 pending before the Grand Court of the Cayman Islands (the "Cayman Court"), ¶ 14.  A copy of the Gotthoffer Affidavit, and the exhibits submitted therewith, is attached hereto as Exhibit A.[1]

On or around July 31, 2007, the Master Fund, through which the Overseas Feeder Fund and Domestic Feeder Fund executed all investments, commenced a voluntary liquidation proceeding in the courts of the Cayman Islands (the "Cayman Master Fund Liquidation Proceeding").  On the same date, the Master Fund filed its petition for relief under chapter 15 of

---

[1] As Appellants point out "[t]his Court may take judicial notice of 'a pleading and official court record of an inferior court in ... a case that is related to this one.'"  Appellants' Brief p. 12, fn. 9.  All of the information set forth herein is of record in related court proceedings, specifically the Cayman Feeder Fund Liquidation and/or the proceeding in which the Massachusetts Complaint (as that term is defined below) is pending.

the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, the subject of the instant appeal. At that time, no liquidation proceeding was commenced for the Overseas Feeder Fund.

**B.     The Petition Process To Remove Those
In Control Of The Overseas Feeder Fund**

On or about August 10, 2007, pursuant to the provisions of the Overseas Feeder Fund's Articles of Association and its Confidential Offering Memorandum, a shareholder of the Overseas Feeder Fund holding more than 10% of the eligible shares petitioned to remove each of the members of the Overseas Feeder Fund's board of directors (the "BSAM Board of Directors") and replace them with the Elected Representatives. *See* Exhibit A, Gotthoffer Affidavit, ¶ 26.

On or about August 27, 2007, the BSAM Board of Directors informed the Petitioning Shareholder that it viewed the petition submitted on August 10, 2007 as deficient. The Petitioning Shareholder submitted revised petitions on or about September 11, 2007, thereby correcting the alleged deficiencies cited by the BSAM Board of Directors.

On or about October 9, 2007, the participating shareholders/investors of the Overseas Feeder Fund received notice of a meeting of all shareholders to occur on November 14, 2007, to vote on the removal and replacement of the BSAM Board of Directors (the "Election Notice"). See Exhibit A, Gotthoffer Affidavit, ¶ 27. A copy of the Election Notice, with portions redacted to remove certain confidential identifying information, is attached to the Gotthoffer Affidavit. See Exhibit A, Gotthoffer Affidavit, LG-1(D), pp. 137-147.

Fearing that the Overseas Feeder Fund's investors would remove the BSAM Board of Directors and replace it with an independent board, thereby paving the way for possible litigation against BSAM, BSAM has done everything in its power to thwart the shareholders' fundamental

voting rights, including initiating a voluntary foreign liquidation proceeding for the Overseas Feeder Fund.

### C.    The Liquidation Proceeding of the Overseas Feeder Fund

On November 1, 2007, less than two weeks before the election to remove the BSAM Board of Directors, the shareholders of the Overseas Feeder Fund received notice (the "Liquidation Notice") that the BSAM Board of Directors sought to abdicate all of its power to the Foreign Liquidators by commencing a voluntary liquidation under the laws of the Cayman Islands (the "Cayman Feeder Fund Liquidation").   See Exhibit A Gotthoffer Affidavit, ¶ 28. A copy of the Liquidation Notice, redacted only to remove certain confidential information, is attached to the Gotthoffer Affidavit.  See Exhibit A, Gotthoffer Affidavit, LG-1(D), p. 148.

Through the Liquidation Notice, the BSAM Board of Directors informed the Overseas Feeder Fund shareholders that, regardless of the outcome of the November 14 election, the Board of Directors of the Overseas Feeder Fund effectively would have no power going forward.  The Liquidation Notice represented that the scheduled election had been rendered moot and strongly discouraged shareholders from participating in the election.  Specifically, it stated that:

> [U]pon the appointment of the Liquidators, the powers of the Board of Directors of the [Overseas Feeder] Fund have now fallen into abeyance, and accordingly the Board of Directors of the Fund no longer has authority and control over the Fund.
>
> We note these facts in connection with the Special Meeting of Shareholders scheduled to take place on November 14 and the proposal to replace the Directors in connection therewith, and that such action would not affect the authority of the Liquidators to conduct the winding – up of the Fund.

*See* Exhibit A, Gotthoffer Affidavit, LG-1(D), p. 148 ¶¶ 3 & 4.

During the ninety-two day gap between the filings of the Cayman Master Fund Liquidation Proceeding and the Cayman Feeder Fund Liquidation, there were no intervening

circumstances that compelled filing the Overseas Feeder Fund foreign liquidation proceeding. The sole impetus for the Cayman Feeder Fund Liquidation appears to have been the approaching election to remove the BSAM Board of Directors and installation of a new, independent board.

This motivation is evidenced by the fact that, at the time the Cayman Feeder Fund Liquidation was initiated, the Overseas Feeder Fund's major assets were its claims against the Master Fund, BSAM, and/or certain of their agents or affiliates. Yet, in ceding their authority in the Cayman Feeder Fund Liquidation, the BSAM Board of Directors selected the Foreign Liquidators to oversee the Cayman Feeder Fund Liquidation – the same Foreign Liquidators overseeing the Cayman Master Fund Liquidation Proceeding. The BSAM Board of Directors made this selection notwithstanding the inherent conflict of interest that existed between the Master Fund and the Overseas Feeder Fund.

In spite of these actions, the shareholders were successful in removing the BSAM Board of Directors by unanimous vote on November 14, 2007, and the ousted BSAM Board of Directors thereby transferred any remaining authority it had with respect to the Overseas Feeder Fund to the Elected Representatives. See Exhibit A, Gotthoffer Affidavit, ¶ 30. The Elected Representatives are currently supporting the process of contesting the Cayman Feeder Fund Liquidation within the Cayman courts.

### D. Continuing Efforts Of The Elected Representatives To Investigate The Demise Of the Overseas Feeder Fund and the Master Fund

As the sole board members of the Overseas Feeder Fund, the Elected Representatives are obligated and authorized to investigate and prosecute claims on behalf of investors and the Overseas Feeder Fund. Each of the Elected Representatives brings substantial experience and resources to address the complex issues and claims that relate to the Overseas Feeder Fund and they are wholly independent of the Master Fund, BSAM, and/or their agents or affiliates. In

contrast, as a result of their connection to the liquidations of both the Master Fund and the Overseas Feeder Fund, the Foreign Liquidators are unable to investigate the interactions and potential claims between these entities, and there is an obvious concern that the Foreign Liquidators are unduly beholden to BSAM, as the party that has appointed them to a multiplicity of lucrative roles.

This fact is particularly troublesome in light, *inter alia*, of the serious allegations that have already been levied against BSAM in connection with its management of the Master Fund. See Administrative Complaint filed against BSAM by the Enforcement Section of the Massachusetts Securities Division of the Office of the Secretary of the Commonwealth dated November 14, 2007 (the "Massachusetts Complaint"), a copy of which is annexed hereto as Exhibit B.

Simply put, the shareholders of the Overseas Feeder Fund have lost all their investment. They need affirmation that the liquidation of the Master Fund will not be a sham. This is especially true in light of the consistent and overwhelming determination of BSAM, as detailed above, to avoid any legitimate inquiry into the alleged wrongdoings that contributed to the near-instant disappearance of hundreds of millions in shareholder capital.

Furthermore, proceedings in the Cayman Feeder Fund Liquidation compel the conclusion that the Cayman Master Fund Liquidation Proceeding should not be recognized in the United States. Even in its infancy, the Cayman Feeder Fund Liquidation demonstrates at least the following:

- The Overseas Feeder Fund is left only with assets of relatively limited value, apart from any claims it might have against the Master Fund, BSAM, and/or their agents or affiliates;

- The Overseas Feeder Fund has no debt save alleged obligations to BSAM and its affiliates;

- The petition to appoint the Foreign Liquidators as provisional liquidators of the Overseas Feeder Fund was approved ninety-two (92) days after the petition to appoint the Foreign Liquidators with respect to the Master Fund but only two weeks before the certain ouster of the BSAM Board of Directors;

- The invested capital of the Overseas Feeder Fund, exceeding $600,000,000, has apparently vanished into the maw of the Master Fund, which occurrence is to be examined by the Foreign Liquidators who act on behalf of both the Master Fund and the Overseas Feeder Fund -- replacing window glass with a mirror, so to speak.

The events subsequent to the date of the Order confirm that BSAM, as (a) the mastermind behind the complex organizational structure encompassing the Master Fund and the Overseas Feeder Fund, and (b) the entity with the authority to direct the actions of the Master Fund and, until recently the Overseas Feeder Fund, has an inherently vested interest in concealing the circumstances that resulted in the complete and precipitous demise of these investment funds.

Nevertheless, after selecting an opaque and distant forum in which to conduct the Cayman Master Fund Liquidation and the Cayman Feeder Fund Liquidation, BSAM and the Foreign Liquidators still wish to avail themselves of the benefits and protections of the Bankruptcy Code. This manipulation of the system provides no benefit to the true parties that were damaged by the implosion of these funds – the shareholders – and does not constitute a valid basis for the expenditure of judicial resources of the Bankruptcy Court or the infringement of the rights of the shareholders.

The Bankruptcy Court has invited the Master Fund to take advantage of those protections by filing a petition for relief under chapter 7 or chapter 11 of the Bankruptcy Code, and the Foreign Liquidators have not done so. Instead, they have opted to proceed in the courts of the Cayman Islands where the significant wrongdoings identified in, *inter alia*, the Massachusetts Complaint, which the Elected Representatives now seek to uncover, may escape the level of inquiry necessary to protect the rights of investors.

V.    **ARGUMENT**

A.    **The Bankruptcy Court's Order Well Served Economic And
      Equitable Policies Underlying Chapter 15's Recognition Requirements**

Because of the paucity of the factual record, Appellants and the Amici necessarily focus

their arguments on the proper interpretation of § 1517 of the Bankruptcy Code for a consistent,

predictable rule of law.   Indeed, certainty of result and ease of judicial administration are,

without doubt, central policy objections of the revisions to chapter 15, recognizing a key element

of vibrant trade and commerce to be a predictable rule of law.

Section 1517 sets forth the conditions under which a bankruptcy proceeding commenced

in a foreign jurisdiction will be recognized and is founded on sound, pragmatic principles.   A

party engaged in commerce with another naturally assumes that the center of main interest

("COMI") for the counterparty is in the jurisdiction where the business is done or, at least, that

the counter-party is established in that jurisdiction.   If the transaction goes awry, there is no

expectation that an insolvent counterparty will then abandon the jurisdiction of its COMI or

establishment and retreat to another corner of Earth in order that claims may be adjudicated

under a legal system strange to the initial transaction.   In this way, recognition based on a

debtor's COMI or place of establishment under chapter 15 makes perfect sense.   It prevents

recognition of an insolvency initiated in a jurisdiction where the debtor has neither its COMI nor

an establishment because such a filing constitutes either globalized forum shopping and/or a

filing for an improper or abusive purpose.

In the instant case, the Master Fund lacks COMI or establishment in the Cayman Islands,

and, accordingly, the Bankruptcy Court correctly denied recognition of its foreign liquidation

proceeding.   The evidence before the Bankruptcy Court indicates that the only business done in

the Cayman Islands was limited to those steps necessary to maintain the Master Fund in good

standing as a registered Cayman Island company. See Order, p. 12, fn 8. There are no employees or managers of the Master Fund located in the Cayman Islands, and its investment manager, liquid assets, and books and records were all in the United States prior to the commencement of the Cayman Master Fund Liquidation Proceeding. Id., p. 13.

Furthermore, the insolvency proceedings of the Master Fund enjoy no visible creditor interest or support, and the insolvency proceedings of the Overseas Feeder Fund appear to serve no economic purpose at all because there are neither assets nor legitimate creditors. It is equally apparent that the purpose of the chapter 15 filing and Cayman Feeder Fund Liquidation is to compel both the direct and tangential involvement of all parties in interest in proceedings in the Caymans with respect to actions, omissions and transactions of business entities which are virtually all known to have their COMI in New York City.

In fact, when viewed in light of the events occurring subsequent to the entry of the Order, it is glaringly apparent that the true purposes of this chapter 15 proceeding, and most certainly the Cayman Overseas Feeder Fund Liquidation, is to frustrate, delay or complicate investigation and litigation of massive claims the investors in the Overseas Feeder Fund may hold against BSAM and its affiliates, or that the Master Fund and/or the Overseas Feeder Fund may have against their own directors and investment advisors.[2]

Thus, the policy bases for recognition imposed by chapter 15 have functioned well to prevent the Master Fund's attempt to maintain viable insolvency proceedings in a jurisdiction

---

[2] The announced purpose of the unprecedented action by investors to remove the BSAM Board of Directors and replace it with the Elected Representatives was to permit independent investigation of the Overseas Feeder Fund's affairs, including its transactions with the Master Fund, unfettered from the expense and adversary framework of discovery in litigation and claims of privilege and confidentiality which have thus far frustrated investor inquiries, but which claims of privilege and confidentially cannot be raised when the inquirer is the Overseas Feeder Fund itself.

foreign to the business of the Master Fund.  Indeed, this attempt at global forum shopping has properly  not been condoned here by the Bankruptcy Court.

### B.     The U.S. Courts Should Not Provide Their Imprimatur to the Proceedings in the Cayman Court

BSAM and its affiliates are running away from United State courthouses and the protections afforded to investors under proceedings supervised in the United States Courts. While it may appear as though the Foreign Representatives are prying their way into the Bankruptcy Court through this pending appeal, on closer examination, this appeal by the Foreign Representatives represents an attempt to get approval by the U.S. Courts of a foreign proceeding without the inquiry and investor protections that would otherwise accompany a U.S. Court proceeding.

The Master Fund wishes to avail itself of the benefits of a proceeding under the Bankruptcy Code and urges that – based on principles of comity – the recognition of the Cayman Master Fund Liquidation Proceeding should be given a rubber stamp of approval.  Although the Bankruptcy Court noted that proceedings under alternate chapters of the Bankruptcy Code might be more apt, the Foreign Liquidators state that "petitions under chapter 7 or 11 of the Bankruptcy Code would exact unnecessary costs and delays based on the facts and circumstances then known to the Foreign [Liquidators]."  <u>Appellants' Opening Brief</u>, p. 10.  Undoubtedly, these "unnecessary" costs and delays include the inquiry necessary to unwind the conflicts of interests and potential claims of liability inherent in the relationship between and among BSAM, the Master Fund, and the Overseas Feeder Fund – something that the Foreign Liquidators are inclined to ignore and something the Foreign Liquidators would be able to ignore if the Bankruptcy Court's Order denying that recognition is not affirmed.

In particular, these inquiries include:

- Were these proceedings had under chapter 7, the Foreign Liquidators would almost certainly be disqualified as Trustees based on their inherent conflict of interest, as described above, and related to the manner of their selection by the respective debtors.

- While BSAM provided very modest (under the circumstances) funding of the activities of the Foreign Liquidators (*inter alia*, to create sham debt of the Overseas Feeder Fund), that funding is grossly insufficient to conduct or support necessary investigations and prosecution of claims. The true parties in interest, being the shareholders of the Overseas Feeder Fund, and possibly the creditors of the Master Fund, are highly unlikely to fund the investigative activities of the Foreign Liquidators hand-selected by BSAM.

- To the extent that either or both the Master Fund and/or the Overseas Feeder Fund hold claims against defendants who are also defendants in individual actions brought by shareholders and creditors, the Elected Representatives anticipate that the Foreign Liquidators may seek to stay, delay, or otherwise interfere with such independent causes of action by using the protections afforded under chapter 15 recognition as a sword, and not as a shield. Under chapter 15, such discretionary undertakings and decisions by the Foreign Liquidators would be subject to the scrutiny and approval of the Cayman Court, a jurisdiction foreign both to pending and future litigation and inconsistent with the expectations of the parties.

- The very involvement of U.S. bankruptcy courts in insolvency proceedings of dubious merit and legal propriety should either be: (a) examined by the U.S. bankruptcy courts under the full protections granted by Section 303 of the Bankruptcy Code and general principles of jurisprudence disallowing filings made in bad faith, or (b) denied recognition for the very reasons enunciated by the Bankruptcy Court in this case. What must not be allowed is to permit the threshold decision of whether an insolvency proceeding should be commenced or continued to be made by the courts of a jurisdiction foreign to the transactions between the interested parties that is not the COMI or a place in which an alleged debtor has an 'establishment,' as that term is defined in relation to foreign nonmain recognition.

If such recognition were granted, therefore, the impact on the Elected Representatives and the shareholders of the Overseas Feeder Fund would be substantial. In contrast, under Section 1509 of the Bankruptcy Code, if recognition is denied, a court may issue "any appropriate order necessary to prevent the foreign representative from obtaining comity or

cooperation from courts in the United States." 11 U.S.C. § 1509. Here, BSAM has exercised every power available to it to thwart the attempts of the shareholders and Elected Representatives in their efforts to uncover the facts behind the evaporation of the shareholders' investments. The chapter 15 petition of the Master Fund is simply another mechanism for BSAM to delay and frustrate the efforts of the Elected Representatives. The Master Fund's attempt to gain recognition of the Cayman Master Fund Liquidation Proceeding through its chapter 15 filing is nothing more than an attempt to quash the Elected Representatives' rights to pursue claims in the courts of the United States without the impairment of a recognized foreign insolvency proceeding.

In sum, BSAM and its directors of the Master Fund and the Overseas Feeder Fund are attempting to engineer insolvency proceedings which could not withstand judicial scrutiny if filed under chapter 7 (much less chapter 11) of the Bankruptcy Code, but which nevertheless achieve recognition by a United States court with all attendant possibilities of mischief.[3] For precisely the reasons stated by the Bankruptcy Court, neither a lack of objection nor presumptions blatantly contradicted by obvious facts should be allowed to draw the United States Bankruptcy Courts into schemes that would not be recognized under any other chapter of the Bankruptcy Code.

---

[3] By way of one example of many, a U.S. court's determination with respect to the validity of claims of privilege or conflict would be affected to the extent that a recognized foreign insolvency proceeding interjected principles of comity requiring the U.S. court to consider the law of the Caymans as well as U.S. law.

## VI.     <u>CONCLUSION</u>

For the reasons stated herein, the Elected Representatives respectfully request that the Order be affirmed.

Dated: December 21, 2007

Counsel for the Amici Curiae,
Bart Schwartz and FTI Capital Advisors, LLC
REED SMITH LLP

By: _____ */s/ Lance Gotthoffer* _____
Lance Gotthoffer, Esq.
599 Lexington Avenue
New York, New York 10022
(212) 521-5400