labor-intensive and one of the principal reasons why proceedings are expensive.

**The Investors' Attempts to Replace the HGEL Overseas Fund's Board**

26. On August 10, 2007, with the support of the Investor Funds and others, an investor holding more than 10% of the shares of the HGEL Overseas Fund submitted sought to requisition a general meeting of the shareholders to remove the HGEL Overseas Fund board of directors, and replace its members with shareholder nominees, so that an independent body could investigate the events leading to the HGEL Overseas Fund's collapse, including the actions of BSAM and related entities. On or after August 27, 2007, the investor submitted revised resolutions.

27. Pursuant to this request the participating shareholders/investors received notice of a meeting of all shareholders on or about October 9, 2007, for purposes of voting on removal and replacement of the members of the HGEL Overseas Fund Board of Directors. The notice specified November 14, 2007, as the date of the meeting, and the London office of Bear Stearns as the location of the election. A true and accurate copy of the notice, which attaches each of the proposed motions or resolutions, redacted only to remove certain confidential identifying information, appears at pages 137-147 of LG-1.

28. Having known about the proposed meeting and its purpose for nearly one month, and less than two weeks before the scheduled meeting, the investors/participating shareholders received a letter on November 1, 2007 from the directors stating that the HGEL Overseas Fund board of directors had surrendered its powers to the KPMG liquidators by commencing a voluntary liquidation under the laws of the Cayman Islands (the "Cayman Proceeding Notice"). A copy of the Cayman Proceeding Notice appears at page 148 of LG-1. I presume that a resolution was

passed by Walkers SPV (holder of the US$3,000 Ordinary Shares) to place HGEL Overseas Fund into voluntary liquidation.

29. On November 8, 2007, just prior to the meeting removing the former board of directors, the KPMG liquidators sent a letter to all HGEL Overseas Fund shareholders, discouraging them from participating in the scheduled election. The letter suggested that the Fund had a liability of US$150m, and specifically states: *"The Feeder Fund has a number of creditors and therefore is itself insolvent."* A copy of the letter appears at pages 150-154 of LG-1.

30. The investors meeting nevertheless took place as originally scheduled on November 14, 2007. At the meeting, a unanimous vote was taken by all shareholders present and voting (representing investors holding 55.8% of outstanding shares) to replace the HGEL Overseas Fund board of directors with FTI Capital Advisors, LLC, and Bart Schwartz, Esq., the former Chief of the Criminal Division of the U.S. Attorney's Office for the Southern District of New York. Those investors all knew of the voluntary liquidation. Guy Locke, a partner of Walkers attended the London meeting as counsel for the (outgoing) board of directors.

31. In August 2007, BSAM put the HGEL Master Fund into a voluntary liquidation and designated KPMG as the liquidators. I am aware of no change in circumstances of the HGEL Overseas Fund since August 2007 that necessitated or warranted commencement of the voluntary liquidation in November 2007. As I explain in greater detail below, HGEL Overseas Fund is clearly not insolvent. Certainly, the urgency with which this was done so as to pre-date the election appears to be contrived and at any rate has not been explained. Despite knowing of the meeting at which the HGEL Overseas Fund directors were to be replaced, neither the Board nor BSAM communicated with investors prior to placing the fund into

voluntary liquidation. It surely would have been simple to await the outcome of the meeting.

32. The only reasonable inference that I can draw is that the voluntary liquidation of the HGEL Overseas Fund was commenced for the principal purpose of avoiding the effect of the scheduled election and an investigation led by independent new directors. I believe this step was taken deliberately by BSAM and Walkers SPV to thwart the voting process and I consider the resolution to place HGEL Overseas Fund into voluntary liquidation to have been taken in bad faith.

**Solvency of the HGEL Overseas Fund**

33. Contrary to what was said in the November 8, 2007 letter from KPMG, the HGEL Overseas Fund is in fact solvent. The KPMG liquidators gave a presentation at a meeting of investors in London on December 4, 2007, a hard copy of which appears at pages 176-190 of LG-1. The presentation was attended by one of my London partners. As can be seen from the statement of assets and liabilities the HGEL Overseas Fund is solvent on a balance sheet basis.

34. The HGEL Overseas Fund's main asset consists of the estimated realization (at 100%) of a US$14m claim to recover an overpaid redemption. The assets do not take account of the potential claims which the fund has against BSAM and others. There is no liability of US$150m, as has been alleged by BSAM. Indeed it would be surprising for a feeder fund supplying investment capital to the Master Fund, to have creditors other than regulatory and other fund fees and expenses. Indeed it is now apparent from the information given on December 4, 2007 that the only substantial liability relates to alleged management fees due to BSAM in the amount of approximately US$2,757,000 which, insofar as I am aware, are not yet due and payable and as to which I would respectfully point out

there is no basis for paying these fees when a substantial claim against BSAM seems probable.

35. The HGEL Overseas Fund does not trade and has no ongoing expenses as far as I am aware other than the fees of the voluntary liquidators. The fund also has cash of US$750,000 provided by BSAM as a condition for KPMG taking on the assignment apparently provided on a no-strings attached and no recourse basis. It is therefore also obvious that the HGEL Overseas Fund can meet its liabilities as they fall due and is solvent on a cash-flow basis. In sum, the statements about insolvency made in the November 8, 2007 letter simply were not true.

**The Voluntary Liquidation Should be Stayed**

36. The investors have lost the entirety of their investments as matters stand since it is reasonably clear that HGEL Overseas Fund will not receive any distribution from the Master Fund into which it invested. Claims against third parties represent the only chance of investors recovering any substantial portion of their investments. If recovery is possible, they need and want to take urgent steps to bring this about.

37. The right to replace the HGEL Overseas Fund board of directors was secured to the participating shareholders in order for their chosen directors, rather than BSAM appointed liquidators, to investigate potential claims. By exercising that right, the holders of the majority of HGEL Overseas Fund participating shares, including the Investor Funds, expressed their will to remove the former board of directors and provide control over the HGEL Overseas Fund to new directors nominated by them. Keeping the HGEL Overseas Fund in voluntary liquidation cuts across the majority investors' will. The investors have also clearly expressed their objection to a liquidation by voting to remove the BSAM

controlled board and appoint new directors, notwithstanding the contents of KPMG's letter of November 8, 2007.

38. The KPMG liquidators have indicated at the December 4 meeting that BSAM has agreed to provide funding in the order of US$750,000 to enable the KPMG liquidators to conduct a proper liquidation of HGEL Overseas Fund. However, it is apparent that this will be grossly insufficient to cover the costs of the liquidation as well as the costs of multi-million dollar litigation against BSAM and related entities. There is no realistic hope that KPMG can carry out a meaningful investigation for the amount of money that has been made available by BSAM. As I have pointed out, this would normally be resource- and labor-intensive work. Certainly, BSAM would not be expected to make any substantial further funds available to the HGEL Overseas Fund if it transpires that proceedings are being actively contemplated against it.

39. It is therefore only a matter of time before the liquidators become unable to carry out these functions in a meaningful manner. Even the US$14m asset requires a recovery action to be started and this will inevitably take time. Accordingly, it will inevitably be for the investors who have lost all their investments in the HGEL Overseas Fund to fund the litigation in order to achieve any prospect of recovery in the liquidation. Those investors are likely to regard it as unacceptable that litigation is not conducted by the individuals appointed by them. It is also likely to be considerably cheaper and more palatable to them to rely on directors based in New York.

40. Although I am advised and accept that the Court would not remove the KPMG liquidators for cause at this stage, I wish to draw attention to what I perceive to be an irreconcilable conflict on their part in representing the Master Fund at the same time as the HGEL Overseas Fund. It is highly likely that the HGEL Overseas Fund will have claims

14

against the Master Fund arising from the investments that were pursued. It was the directors of the Master Fund who failed to observe the transaction approval process. There have been instances in the U.S. where the different entities of a fund structure have taken adverse positions to each other. I also observe that the Funds are not part of an ordinary group structure. The HGEL Overseas Fund does not appear to hold shares in the Master Fund. The person primarily interested in the Master Fund appears to be Barclays and the Master Fund's other creditors. In contrast, the persons primarily interested in the HGEL Overseas Fund are its investors. I reserve the right on behalf of my clients to draw this conflict to the attention of the Court.

41. There is no reason why the investigations into the claims against BSAM, affiliated entities, directors and service providers and any subsequent proceedings could not be managed by the current directors who were appointed by the investors specifically for that purpose. Those investors are the only ones who will participate in the profits and who would benefit from such litigation. I respectfully submit that it is much more appropriate for directors properly elected by those investors to be given the right to pursue those whom they consider on due analysis to be liable and to carry out the preliminary investigations necessary for that purpose.

42. I understand that one option the Court might consider is to appoint another liquidator. If that is to be the case (and for the reasons I suggested above it is preferable to allow the new board to carry on the necessary work) then the new board of directors has in mind to appoint Geoff Varga and Bill Cleghorn of Kinetic Partners (Cayman) ("Kinetic") as replacement liquidators. It is envisaged that Kinetic will work closely with the new board of directors to conduct all necessary investigations into the dealings of HGEL Overseas Fund and ensure an orderly winding down of its business. Kinetic have agreed to be appointed as liquidators, and have provided me with a letter indicating their consent to act. A true copy of

that letter, with attached Curriculum Vitae of Geoff Varga and Bill Cleghorn, is now produced and shown to me marked Exhibit "**LG-2**".

SWORN to at New York, USA
this 7th day of December 2007
before me

_____
Lance Gotthoffer

_____
Notary Public

ALICIA C. THANASOULIS
Notary Public, State of New York
No. 02TH6063962
Qualified in New York County
Commission Expires September 10, 200[?]

16

This Affidavit was filed by Appleby, Attorneys-at-Law for the Applicant, whose address for service is that of its said Attorneys-at-law, Clifton House, 75 Fort Street, PO Box 190, George Town, Grand Cayman, Cayman Islands KY1-1104 (Ref: JST/12742.001).