For the exclusive use of: Sciens

Memorandum No.: 157

### CONFIDENTIAL OFFERING MEMORANDUM

# BEAR STEARNS
# HIGH-GRADE STRUCTURED CREDIT STRATEGIES
# ENHANCED LEVERAGE (OVERSEAS) LTD.
### (A Cayman Islands Exempted Company)

*Redeemable, Participating Non-Voting Shares*

———————————

THE SHARES OFFERED HEREBY HAVE NOT BEEN REGISTERED OR QUALIFIED UNDER THE U.S. SECURITIES ACT OF 1933 OR THE SECURITIES LAWS OF ANY STATE OR JURISDICTION AND ARE BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THOSE LAWS. THE SHARES HAVE NEITHER BEEN APPROVED OR DISAPPROVED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION OR ANY OTHER SECURITIES COMMISSION OR GOVERNMENTAL AUTHORITY NOR HAVE ANY OF THE FOREGOING PASSED UPON OR ENDORSED THE MERITS OF THE OFFERING OR THE ACCURACY OR ADEQUACY OF THIS CONFIDENTIAL OFFERING MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

———————————

## BEAR STEARNS ASSET MANAGEMENT INC.

*Investment Manager*
383 Madison Avenue
New York, New York 10179
United States

**August 2006**

## CFTC NOTICE

BEAR STEARNS ASSET MANAGEMENT INC. IS EXEMPT FROM, AND MAY NOT MAINTAIN, REGISTRATION WITH THE U.S. COMMODITY FUTURES TRADING COMMISSION ("COMMISSION") AS A COMMODITY POOL OPERATOR AND THEREFORE, UNLIKE A NON-EXEMPT COMMODITY POOL OPERATOR, IS NOT REQUIRED TO DELIVER A DISCLOSURE DOCUMENT AND A CERTIFIED ANNUAL REPORT TO PARTICIPANTS IN THE POOL. THE POOL IS OPERATED PURSUANT TO THE FOLLOWING CRITERIA: (I) INTERESTS IN THE POOL ARE EXEMPT FROM REGISTRATION UNDER THE U.S. SECURITIES ACT OF 1933, AND SUCH INTERESTS MAY NOT BE OFFERED AND SOLD THROUGH A PUBLIC OFFERING IN THE UNITED STATES; AND (II) (A) EACH NATURAL PERSON PARTICIPANT (INCLUDING SUCH PERSON'S SELF-DIRECTED EMPLOYEE BENEFIT PLAN, IF ANY), IS A "QUALIFIED ELIGIBLE PERSON", AS THAT TERM IS DEFINED IN 17 C.F.R. SECTION 4.7(A)(2); AND (B) EACH NON-NATURAL PERSON PARTICIPANT IS A "QUALIFIED ELIGIBLE PERSON", AS THAT TERM IS DEFINED IN 17 C.F.R. SECTION 4.7, OR AN "ACCREDITED INVESTOR", AS THAT TERM IS DEFINED IN 17 C.F.R. SECTION 230.501(A)(1)-(3), (A)(7) AND (A)(8).

## GENERAL NOTICES

PROSPECTIVE INVESTORS SHOULD READ THIS CONFIDENTIAL OFFERING MEMORANDUM (THE "MEMORANDUM") CAREFULLY BEFORE DECIDING WHETHER TO PURCHASE SHARES AND SHOULD PAY PARTICULAR ATTENTION TO THE INFORMATION SET FORTH UNDER THE HEADING "CERTAIN RISK FACTORS". INVESTMENT IN THE SHARES IS SPECULATIVE AND INVOLVES SIGNIFICANT RISK. INVESTORS SHOULD UNDERSTAND SUCH RISKS AND HAVE THE FINANCIAL ABILITY AND WILLINGNESS TO ACCEPT THEM FOR AN EXTENDED PERIOD OF TIME.

THE SHARES MAY NOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF WITHOUT THE CONSENT OF THE DIRECTORS OF BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE (OVERSEAS) LTD. (THE "FUND") AND COMPLIANCE WITH APPLICABLE SECURITIES LAWS.

THE SHARES ARE NOT INSURED OR GUARANTEED BY THE UNITED STATES FEDERAL DEPOSIT INSURANCE CORPORATION OR ANY OTHER GOVERNMENTAL AGENCY. THE SHARES ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF ANY BANK OR OTHER FINANCIAL INSTITUTION, AND ARE NOT GUARANTEED BY ANY BANK OR OTHER FINANCIAL INSTITUTION.

NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATIONS OR PROVIDE ANY INFORMATION WITH RESPECT TO THE SHARES EXCEPT SUCH INFORMATION AS IS CONTAINED IN THIS MEMORANDUM. NEITHER THE DELIVERY OF THIS MEMORANDUM NOR ANY SALES MADE HEREUNDER SHALL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE MATTERS DISCUSSED HEREIN SINCE THE DATE HEREOF.

THIS MEMORANDUM CONSTITUTES AN OFFER ONLY IF DELIVERY OF THIS MEMORANDUM IS PROPERLY AUTHORIZED BY THE FUND OR AN APPROVED PLACEMENT AGENT.

THIS MEMORANDUM HAS BEEN PREPARED BY THE FUND SOLELY FOR THE BENEFIT OF PERSONS INTERESTED IN THE PROPOSED SALE OF THE SHARES, AND ANY REPRODUCTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS WITHOUT THE PRIOR WRITTEN CONSENT OF THE DIRECTORS IS PROHIBITED. ANY CONTRARY ACTION MAY PLACE THE PERSON OR PERSONS TAKING SUCH ACTION IN VIOLATION OF APPLICABLE SECURITIES LAWS.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION TO SELL OR A SOLICITATION OF AN OFFER TO BUY, NOR SHALL THERE BE ANY OFFER, SOLICITATION, OR SALE OF THE SHARES IN ANY JURISDICTION IN WHICH SUCH OFFER, SOLICITATION, OR SALE IS NOT AUTHORIZED OR TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE ANY SUCH OFFER, SOLICITATION, OR SALE. THIS MEMORANDUM IS NOT, AND UNDER NO CIRCUMSTANCES IS IT TO BE CONSTRUED AS, A PROSPECTUS OR ADVERTISEMENT, AND THE OFFERING CONTEMPLATED IN THIS MEMORANDUM IS NOT, AND UNDER NO CIRCUMSTANCES IS IT TO BE CONSTRUED AS, A PUBLIC OFFERING OF SHARES.

THIS MEMORANDUM CONTAINS A FAIR SUMMARY OF THE MATERIAL TERMS OF THE INFORMATION PURPORTED TO BE SUMMARIZED HEREIN. HOWEVER, THIS IS A SUMMARY ONLY AND DOES NOT PURPORT TO BE COMPLETE. ACCORDINGLY, REFERENCE IS MADE TO THE MEMORANDUM AND ARTICLES OF ASSOCIATION OF THE FUND AND THE OTHER AGREEMENTS, DOCUMENTS, STATUTES, AND REGULATIONS REFERRED TO HEREIN FOR THE EXACT TERMS OF SUCH MEMORANDUM AND ARTICLES OF ASSOCIATION, OTHER AGREEMENTS, DOCUMENTS, STATUTES, AND REGULATIONS.

THE CONTENTS OF THIS MEMORANDUM SHOULD NOT BE CONSTRUED AS INVESTMENT, LEGAL, OR TAX ADVICE. EACH PROSPECTIVE INVESTOR IS URGED TO SEEK INDEPENDENT INVESTMENT, LEGAL, AND TAX ADVICE CONCERNING THE CONSEQUENCES OF INVESTING IN THE FUND.

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS MEMORANDUM, A PROSPECTIVE INVESTOR (AND EACH EMPLOYEE, REPRESENTATIVE, OR OTHER AGENT OF A PROSPECTIVE INVESTOR) MAY DISCLOSE TO ANY AND ALL PERSONS, WITHOUT LIMITATION OF ANY KIND, THE TAX TREATMENT AND TAX STRUCTURE OF THE TRANSACTIONS DESCRIBED IN THIS MEMORANDUM AND ALL MATERIALS OF ANY KIND THAT ARE PROVIDED TO THE PROSPECTIVE INVESTOR RELATING TO SUCH TAX TREATMENT AND TAX STRUCTURE (AS SUCH TERMS ARE DEFINED IN TREASURY REGULATION SECTION 1.6011-4). THIS AUTHORIZATION OF TAX DISCLOSURE IS RETROACTIVELY EFFECTIVE TO THE COMMENCEMENT OF DISCUSSIONS WITH PROSPECTIVE INVESTORS.

THIS MEMORANDUM IS BASED ON THE LAW AND PRACTICE CURRENTLY IN FORCE IN THE CAYMAN ISLANDS AND IS SUBJECT TO CHANGES THEREIN. THIS MEMORANDUM SHOULD BE READ IN CONJUNCTION WITH THE MEMORANDUM AND ARTICLES OF ASSOCIATION OF THE FUND.

ALL REFERENCES HEREIN TO "DOLLARS", "$" OR "U.S.$" ARE TO UNITED STATES DOLLARS.

**NOTICE TO RESIDENTS OF THE CAYMAN ISLANDS**

NO INVITATION MAY BE MADE TO THE PUBLIC IN THE CAYMAN ISLANDS TO SUBSCRIBE FOR THE SHARES.

**NOTICE TO RESIDENTS OF THE UNITED KINGDOM**

THE FUND IS A COLLECTIVE INVESTMENT SCHEME AS DEFINED IN THE FINANCIAL SERVICES AND MARKETS ACT 2000 ("FSMA") OF THE UNITED KINGDOM. IT HAS NOT BEEN AUTHORISED, OR OTHERWISE RECOGNISED OR APPROVED BY THE UNITED KINGDOM FINANCIAL SERVICES AUTHORITY ("FSA") AND, AS AN UNREGULATED COLLECTIVE INVESTMENT SCHEME, ACCORDINGLY CANNOT BE MARKETED IN THE UNITED KINGDOM TO THE GENERAL PUBLIC.

THE ISSUE OR DISTRIBUTION OF THIS MEMORANDUM IN THE UNITED KINGDOM, (A) IF MADE BY A PERSON WHO IS NOT AN AUTHORISED PERSON UNDER THE FSMA, IS BEING MADE ONLY TO, OR DIRECTED ONLY AT, PERSONS WHO (I) HAVE PROFESSIONAL EXPERIENCE IN MATTERS RELATING TO INVESTMENTS; OR (II) ARE CERTIFIED HIGH NET WORTH INDIVIDUALS, HIGH NET WORTH COMPANIES (AND CERTAIN OTHER ENTITIES) OR CERTIFIED SOPHISTICATED INVESTORS FALLING WITHIN ARTICLES 48, 49 AND 50, RESPECTIVELY, OF THE FINANCIAL SERVICES AND MARKETS ACT 2000 (FINANCIAL PROMOTION) ORDER 2001 AND WHO MEET THE REQUIREMENTS THEREUNDER (ALL SUCH PERSONS TOGETHER BEING REFERRED TO AS "FPO PERSONS"); AND (B) IF MADE BY A PERSON WHO IS AN AUTHORISED PERSON UNDER THE FSMA, IS BEING MADE ONLY TO, OR DIRECTED ONLY AT, PERSONS WHO (I) HAVE PROFESSIONAL EXPERIENCE IN PARTICIPATING IN UNREGULATED COLLECTIVE INVESTMENT SCHEMES; OR (II) ARE CERTIFIED HIGH NET WORTH INDIVIDUALS, HIGH NET WORTH COMPANIES (AND CERTAIN OTHER ENTITIES) OR CERTIFIED SOPHISTICATED INVESTORS FALLING WITHIN ARTICLES 21, 22 AND 23, RESPECTIVELY, OF THE FINANCIAL SERVICES AND MARKETS ACT 2000 (PROMOTION OF COLLECTIVE INVESTMENT SCHEMES) (EXEMPTIONS) ORDER 2001 AND WHO MEET THE REQUIREMENTS THEREUNDER; OR (III) ARE PERSONS TO WHOM IT MAY LAWFULLY BE DISTRIBUTED UNDER SECTION 3.11 OF THE FSA'S CONDUCT OF BUSINESS SOURCEBOOK (ALL SUCH PERSONS TOGETHER BEING REFERRED TO AS "PCIS PERSONS" AND, TOGETHER WITH THE FPO PERSONS, THE "RELEVANT PERSONS"). THIS MEMORANDUM MUST NOT BE ACTED ON OR RELIED ON BY PERSONS WHO ARE NOT RELEVANT PERSONS. ANY INVESTMENT OR INVESTMENT ACTIVITY TO WHICH THIS MEMORANDUM RELATES, INCLUDING THE SHARES IS AVAILABLE ONLY TO RELEVANT PERSONS AND WILL BE ENGAGED IN ONLY WITH RELEVANT PERSONS.

POTENTIAL INVESTORS IN THE UNITED KINGDOM ARE ADVISED THAT ALL, OR MOST, OF THE PROTECTIONS AFFORDED BY THE UNITED KINGDOM REGULATORY SYSTEM WILL NOT APPLY TO AN INVESTMENT IN THE FUND AND THAT COMPENSATION WILL NOT BE AVAILABLE UNDER THE UNITED KINGDOM FINANCIAL SERVICES COMPENSATION SCHEME.

**NOTICE TO RESIDENTS OF JAPAN**

THE FILING OF A SECURITIES REGISTRATION STATEMENT UNDER ARTICLE 4, PARAGRAPH 1 OF THE SECURITIES AND EXCHANGE LAW OF JAPAN (THE "SELJ") WITH RESPECT TO THE SOLICITATION FOR THE PURCHASE OF SHARES HAS NOT BEEN AND WILL NOT BE MADE, PURSUANT TO AN EXEMPTION UNDER ARTICLE 2, PARAGRAPH 3, ITEM 2, SUB-ITEM A OF THE SELJ. THE SOLICITATION OF THE PURCHASE OF SHARES IS BEING MADE UNDER THE CONDITION THAT THE INVESTOR WILL ENTER INTO A WRITTEN CONTRACT NOT TO TRANSFER THE SHARES OTHER THAN TO A QUALIFIED INSTITUTIONAL INVESTOR AS THAT TERM IS DEFINED IN THE SELJ.

**NOTICE TO RESIDENTS OF MALAYSIA**

NEITHER THIS MEMORANDUM, NOR ANY OTHER OFFERING MATERIAL OR DOCUMENT ISSUED IN CONNECTION WITH THE OFFERING HAS BEEN OR WILL BE REGISTERED UNDER THE COMPANIES ACT, 1965 OF MALAYSIA. ACCORDINGLY, NO SHARES MAY BE OFFERED OR SOLD IN MALAYSIA, OTHER THAN TO PERSONS WHOSE ORDINARY BUSINESS IT IS TO BUY OR SELL SHARES OR DEBENTURES WHETHER AS PRINCIPAL OR AGENT FALLING WITHIN ANY ONE OF THE CATEGORIES OF PERSONS SPECIFIED IN SECTION 31(1B)(C) OF THE COMPANIES ACT 1965 OF MALAYSIA (AS AMENDED) AND NO DOCUMENT OR OTHER MATERIAL MAY BE DISTRIBUTED IN MALAYSIA IN CONNECTION WITH THE SHARES OTHER THAN TO PERSONS WHOSE ORDINARY BUSINESS IT IS TO BUY OR SELL SECURITIES WHETHER AS PRINCIPAL OR AGENT FALLING WITHIN ANY OF THE CATEGORIES OF PERSONS SPECIFIED IN SECTION 38(1B)(C) OF THE COMPANIES ACT 1965 OF MALAYSIA (AS AMENDED).

**NOTICE TO RESIDENTS OF KOREA**

THE SHARES HAVE NOT BEEN, NOR WILL THEY BE, REGISTERED UNDER THE SECURITIES AND EXCHANGES LAW OF THE REPUBLIC OF KOREA, AND MAY NOT BE OFFERED OR SOLD, DIRECTLY OR INDIRECTLY, OR OFFERED OR SOLD TO ANY PERSON FOR RE-OFFERING OR RESALE, DIRECTLY OR INDIRECTLY, TO ANY RESIDENT OF THE REPUBLIC OF KOREA (AS THE TERM IS DEFINED UNDER THE FOREIGN EXCHANGE MANAGEMENT LAW OF THE REPUBLIC OF KOREA), EXCEPT PURSUANT TO AN EXEMPTION AVAILABLE UNDER THE FOREIGN EXCHANGE MANAGEMENT LAW, THE SECURITIES AND EXCHANGES LAW OR OTHER APPLICABLE LAWS AND REGULATIONS OF THE REPUBLIC OF KOREA.

**NOTICE TO RESIDENTS OF CHINA**

THE SHARES MAY NOT BE OFFERED OR SOLD TO ANY CHINESE INDIVIDUALS OR LEGAL PERSONS, EXCEPT THOSE AUTHORIZED TO INVEST IN AN INVESTMENT COMPANY WITH INVESTMENT OBJECTIVES AND POLICIES SIMILAR TO THOSE OF THE FUND.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OF THE SHARES, WHETHER BY WAY OF SALE OR SUBSCRIPTION, IN THE PEOPLES REPUBLIC OF CHINA.

**NOTICE TO RESIDENTS OF TAIWAN**

THE SHARES WILL BE PLACED BY WAY OF PRIVATE PLACEMENT WITH INVESTORS IN TAIWAN. NEITHER THE FUND NOR ANY SHARE CERTIFICATE REPRESENTING ANY

INTEREST THEREIN HAS BEEN, NOR WILL BE, REGISTERED WITH ANY GOVERNMENT AUTHORITY IN TAIWAN. ANY SALE OR PROMOTION OF THE SHARES IN TAIWAN SHALL BE IN COMPLIANCE WITH APPLICABLE LOCAL LEGAL REQUIREMENTS AND RESTRICTIONS.

**NOTICE TO RESIDENTS OF HONG KONG**

UNLESS THEY ARE PERSONS PERMITTED TO DO SO BY THE SECURITIES LAWS OF HONG KONG, NO PERSON MAY ISSUE, CIRCULATE OR DISTRIBUTE OR CAUSE TO BE ISSUED, CIRCULATED OR DISTRIBUTED IN HONG KONG THIS MEMORANDUM OR ANY OTHER INFORMATION, ADVERTISEMENT OR DOCUMENT RELATING TO THE SHARES OTHER THAN TO A PERSON WHOSE BUSINESS INVOLVES THE ACQUISITION AND DISPOSAL, OR THE HOLDING, OF SECURITIES, WHETHER AS AGENT OR PRINCIPAL.

THIS MEMORANDUM MUST NOT BE USED, CIRCULATED OR DISTRIBUTED IN HONG KONG TO ANYONE OTHER THAN A PERSON WHOSE ORDINARY BUSINESS IS TO BUY OR SELL SECURITIES OR IN CIRCUMSTANCES WHICH DO NOT CONSTITUTE AN INVITATION TO THE PUBLIC TO ACQUIRE SHARES.

**NOTICE TO RESIDENTS OF INDONESIA**

THE SHARES MAY NOT BE OFFERED OR SOLD IN THE REPUBLIC OF INDONESIA OR TO INDONESIAN CITIZENS OR RESIDENTS IN ANY MANNER WHICH MAY CONSTITUTE A PUBLIC OFFER OF SECURITIES UNDER INDONESIAN SECURITIES LAWS.

**NOTICE TO RESIDENTS OF SINGAPORE**

THIS MEMORANDUM IS ADDRESSED SOLELY TO AND FOR THE PERSON NAMED HEREIN AND IS CAPABLE OF ACCEPTANCE ONLY BY SUCH PERSON AND IS NOT TRANSFERABLE. NEITHER THIS MEMORANDUM NOR ANY COPY OF IT MAY BE DISTRIBUTED OR GIVEN TO ANY PERSON OTHER THAN THE PERSON NAMED HEREUNDER.

NO APPROVED DEED HAS BEEN PREPARED OR LODGED WITH THE REGISTRAR OF COMPANIES IN RESPECT OF THE SHARES, NOR HAVE THE REQUIREMENTS OF SECTION 112, 115 OR 116 OF THE COMPANIES ACT (CHAPTER 50, 1994 REVISED EDITION) BEEN COMPLIED WITH. THE SHARES MAY NOT THEREFORE BE OFFERED FOR SUBSCRIPTION OR PURCHASE TO PERSONS IN SINGAPORE OTHER THAN (I) TO AN INSTITUTIONAL INVESTOR OR OTHER PERSON SPECIFIED IN SECTION 106C OF THE SINGAPORE COMPANIES ACT, (II) TO A SOPHISTICATED INVESTOR AND IN ACCORDANCE WITH THE CONDITIONS SPECIFIED IN SECTION 106D OF THE SINGAPORE COMPANIES ACT OR (III) OTHERWISE PURSUANT TO, AND IN ACCORDANCE WITH THE CONDITIONS OF, ANY OTHER APPLICABLE PROVISION OF THE SINGAPORE COMPANIES ACT.

**NOTICE TO RESIDENTS OF SAUDI ARABIA**

THE SHARES MAY NOT BE OFFERED OR SOLD TO ANY PERSON OR IN ANY MANNER IN VIOLATION OF THE SECURITIES LAWS OF SAUDI ARABIA.

**NOTICE TO RESIDENTS OF GERMANY**

THIS MEMORANDUM IS NOT FOR PUBLIC DISTRIBUTION, AND SHARES WILL NOT BE PUBLICLY DISTRIBUTED, IN THE FEDERAL REPUBLIC OF GERMANY.

**NOTICE TO RESIDENTS OF FRANCE**

THE SHARES OFFERED BY THIS MEMORANDUM DO NOT COMPLY WITH THE CONDITIONS IMPOSED BY FRENCH LAW FOR PUBLIC OFFERINGS, SOLICITATION AND ADVERTISING WITHIN FRANCE AND MAY NOT BE OFFERED OR SOLD TO THE PUBLIC IN FRANCE. NEITHER THIS MEMORANDUM NOR ANY OTHER OFFERING MATERIAL RELATING TO THE SHARES MAY BE USED IN CONNECTION WITH ANY OFFER FOR SALE OF THE SHARES TO THE PUBLIC IN FRANCE OR DISTRIBUTED IN FRANCE OTHER THAN TO INSTITUTIONAL INVESTORS.    FURTHERMORE, THE SHARES MAY ONLY BE PURCHASED BY INSTITUTIONAL INVESTORS BUYING FOR THEIR OWN ACCOUNT AND MAY NOT BE PURCHASED BY ANY COLLECTIVE INVESTMENT UNDERTAKING.

**NOTICE TO RESIDENTS OF IRELAND**

THIS MEMORANDUM AND THE INFORMATION CONTAINED HEREIN ARE PRIVATE AND CONFIDENTIAL AND ARE FOR THE USE SOLELY OF THE PERSON TO WHOM THIS DOCUMENT IS ADDRESSED.  THIS MEMORANDUM DOES NOT AND SHALL NOT BE DEEMED TO CONSTITUTE AN INVITATION TO THE PUBLIC TO INVEST IN THE FUND.

**NOTICE TO RESIDENTS OF SWITZERLAND**

PLEASE TAKE NOTE THAT THE SHARES WILL ONLY BE OFFERED TO A SELECT NUMBER OF SWISS INVESTORS.  NO PUBLIC OFFERING OF THE SHARES WILL BE MADE IN SWITZERLAND.  ACCORDINGLY, THE FUND HAS NOT BEEN REGISTERED WITH THE SWISS FEDERAL BANKING COMMISSION UNDER THE 1994 INVESTMENT FUND ACT AND THE CORRESPONDING INVESTMENT FUND ORDINANCE.  WE THEREFORE WOULD LIKE TO EMPHASIZE THAT ANY AND ALL INVESTORS PURCHASING SHARES ARE NOT ENTITLED TO SELL SUCH SHARES TO THIRD PARTIES ON THE BASIS OF A PUBLIC OFFERING.

**NOTICE TO RESIDENTS OF LUXEMBOURG**

PRIVATE PLACEMENT OF SHARES

THE PURPOSE OF THIS MEMORANDUM IS TO GIVE INFORMATION WITH REGARD TO THE FUND AND THE SHARES.  IT IS CONFIDENTIAL AND HAS BEEN PREPARED BY THE FUND SOLELY FOR THE PURPOSE OF USE IN CONNECTION WITH THE PROPOSED PRIVATE PLACEMENT OF THE SHARES.

THE FUND CONFIRMS THAT THE SHARES MAY NOT BE OFFERED, SOLD OR DELIVERED TO THE PUBLIC WITHIN THE GRAND DUCHY OF LUXEMBOURG.  THIS MEMORANDUM IS ONLY INTENDED TO INSTITUTIONAL INVESTORS.  IT IS PERSONAL TO EACH OFFEREE AND DOES NOT CONSTITUTE AN OFFER TO ANY OTHER PERSON OR TO THE PUBLIC GENERALLY TO SUBSCRIBE FOR OR OTHERWISE ACQUIRE THE SHARES. DISTRIBUTION OF THIS MEMORANDUM TO ANY PERSON OTHER THAN THE OFFEREE AND THOSE PERSONS, IF ANY, RETAINED TO ADVISE SUCH OFFEREE WITH RESPECT THERETO IS

UNAUTHORIZED AND ANY DISCLOSURE OF ANY OF ITS CONTENTS, WITHOUT PRIOR WRITTEN CONSENT OF THE FUND, IS PROHIBITED.  EACH PROSPECTIVE PURCHASER, BY ACCEPTING DELIVERY OF THIS MEMORANDUM OR ANY DOCUMENTS REFERRED TO HEREIN AGREES, IF THE OFFEREE DOES NOT PURCHASE THE SHARES OR THE OFFERING IS TERMINATED, TO RETURN THIS MEMORANDUM TO THE FUND.

## NOTICE TO RESIDENTS OF THE NETHERLANDS

THE SHARES MAY NOT BE OFFERED, DIRECTLY OR INDIRECTLY, IN THE NETHERLANDS EXCEPT TO INDIVIDUALS OR ENTITIES WHO OR WHICH TRADE OR INVEST IN SECURITIES IN THE CONDUCT OF A PROFESSION OR BUSINESS WITHIN THE MEANING OF ARTICLE I OF THE EXEMPTION REGULATION OF 9 OCTOBER 1990 ISSUED PURSUANT TO ARTICLE 14 OF THE INVESTMENT INSTITUTION SUPERVISION ACT (WET TOEZICHT BELEGGINGSINSTELLINGEN OF 27 JUNE 1990) WHICH INCLUDES BANKS, BROKERS, SECURITIES INSTITUTIONS, INSURANCE COMPANIES, PENSION FUNDS, INVESTMENT INSTITUTIONS, OTHER INSTITUTIONAL INVESTORS AND OTHER PARTIES, INCLUDING TREASURY DEPARTMENTS OF COMMERCIAL ENTERPRISES AND FINANCE COMPANIES WHICH ARE REGULARLY ACTIVE IN THE FINANCIAL MARKETS IN A PROFESSIONAL MANNER.

## NOTICE TO RESIDENTS OF ITALY

THIS MEMORANDUM MAY NOT BE DISTRIBUTED TO MEMBERS OF THE PUBLIC IN ITALY. THE ITALIAN COMMISSIONE NAZIONALE PER LA SOCIETA E LA BORSA HAS NOT AUTHORIZED ANY OFFERING OF THE SUBSCRIPTION OF SHARES IN THE FUND; ACCORDINGLY, THE SHARES MAY NOT BE OFFERED OR SOLD IN ITALY OR TO RESIDENTS THEREOF EXCEPT AS PERMITTED BY ITALIAN LAW.

**BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE (OVERSEAS) LTD.**

**DIRECTORY**

*Registered Office of the Fund and the Master Fund*
c/o Walkers SPV Limited
P.O. Box 908GT
Walker House, Mary Street
George Town, Grand Cayman
Cayman Islands

*Placement Agents*
Bear, Stearns & Co. Inc., certain of its affiliates
and certain non-affiliated selling agents

*Investment Manager to the Fund and the Master Fund*
Bear Stearns Asset Management Inc.
383 Madison Avenue
New York, New York 10179
United States

| | |
|---|---|
| *Auditors of the Fund*<br>Deloitte & Touche<br>1 Capital Place, P.O. Box 1787 GT<br>Grand Cayman, Cayman Islands | *United States Counsel to the Investment Manager*<br>Sidley Austin LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>United States |
| *Cayman Islands Counsel to the Fund and the Master Fund*<br>Walkers<br>P.O. Box 265GT<br>Walker House, Mary Street<br>George Town, Grand Cayman<br>Cayman Islands | *Administrator, Registrar and Transfer Agent to the Fund and the Master Fund*<br>PFPC Inc. (Delaware)<br>301 Bellevue Parkway<br>Wilmington, Delaware 19809<br>United States |
| *Prime Broker to the Master Fund*<br>Bear, Stearns Securities Corp.<br>One Metrotech Center North<br>Brooklyn, New York 11201<br>United States | *Leverage Instrument Counterparty to the Fund*<br>Barclays Bank PLC<br>1 Churchill Place<br>London, E14 5HP<br>England |

**BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED
LEVERAGE (OVERSEAS) LTD.**

### TABLE OF CONTENTS

| Section | Page |
|---|---|
| INTRODUCTION | 1 |
| TRANSACTION DIAGRAM | 3 |
| SUMMARY OF PRINCIPAL TERMS | 4 |
| THE INVESTMENT PROGRAM | 14 |
| Investment Objective | 14 |
| Structure of the Fund | 14 |
| Investment Strategy | 14 |
| Leverage Instrument | 17 |
| Master Fund Leverage and Credit Hedges | 18 |
| Leverage of the Repackaging Vehicle Junior Interests | 19 |
| Investment Restrictions; Permitted Investments | 19 |
| CERTAIN RISK FACTORS | 20 |
| Potential Loss of Investment | 20 |
| Leverage | 20 |
| CDO Investment Related Risks | 22 |
| Risks Related to an Investment in Repackaging Vehicle Junior Interests | 24 |
| Other Investment Related Risks | 25 |
| Restrictions on Voting Rights of the Fund as Holder of Repackaging Vehicle Junior Interests | 29 |
| Certain Risks Related to the Investment Manager | 29 |
| Certain Risks Related to Fund's Structure | 31 |
| Other Risks | 34 |
| CONFLICTS OF INTEREST | 34 |
| Compensation | 34 |
| Appointment | 34 |
| Advisory Time | 35 |
| Other Clients; Allocation of Investment Opportunities | 35 |
| Proprietary Trading | 36 |
| Brokerage Placement Practices | 36 |
| Brokerage Commissions/Soft Dollars | 37 |
| Principal Trades and Interested Party Transactions; Cross Transactions | 38 |
| Investment Manager's Role as Repackaging Vehicle Collateral Manager | 39 |
| Asset Valuation | 39 |
| Material Non-Public Information | 39 |
| Borrowing Arrangements | 40 |
| Cash Balance Investments | 40 |
| THE INVESTMENT MANAGER | 40 |
| Affiliated Investors | 41 |
| The Fund and the Master Fund Investment Management Agreements | 41 |
| THE MASTER FUND | 43 |
| Master Fund Directors | 43 |
| Capitalization of the Master Fund | 43 |
| BOARD OF DIRECTORS | 43 |
| The Board of Directors; Delegation | 43 |
| Certain Provisions of the Fund's Articles of Association Relating to Directors | 45 |
| Indemnification of Directors | 45 |
| Removal of a Director | 46 |

Other Provisions Relating to the Directors ................................................................48
Transactions between the Fund and the Investment Manager or its Affiliates ................48
THE ADMINISTRATOR ................................................................................................49
THE LEVERAGE INSTRUMENT COUNTERPARTY ....................................................49
BROKERAGE PRACTICES ..........................................................................................50
The Prime Broker ..........................................................................................................50
DESCRIPTION OF THE SHARES ................................................................................53
Capitalization.................................................................................................................53
ELIGIBILITY TO PURCHASE SHARES ......................................................................54
FEES AND EXPENSES ................................................................................................54
Organizational and Initial Offering Costs......................................................................54
Advisory Fee .................................................................................................................55
Incentive Fee ................................................................................................................55
Operational Costs .........................................................................................................56
Administration Fee ........................................................................................................56
Selling Commissions.....................................................................................................56
Reduced Fee Tranches; Rebates ..................................................................................57
REDEMPTIONS ............................................................................................................57
Redemptions .................................................................................................................57
Compulsory Redemptions .............................................................................................59
Suspension of Redemptions..........................................................................................59
Transfers .......................................................................................................................60
Distributions ..................................................................................................................60
NET ASSET VALUE......................................................................................................60
New Issues ....................................................................................................................63
TAXATION AND EXCHANGE CONTROL ....................................................................63
United States Federal Income Taxation .........................................................................64
Cayman Islands Taxation ..............................................................................................66
Other Jurisdictions ........................................................................................................66
Future Changes in Applicable Law ................................................................................67
INVESTMENTS BY EMPLOYEE BENEFIT PLANS ....................................................67
In General ......................................................................................................................67
Restrictions on Investments by Benefit Plan Investors ..................................................68
Ineligible Purchasers.....................................................................................................68
SUBSCRIPTION PROCEDURE ....................................................................................70
PLAN OF DISTRIBUTION.............................................................................................70
PRIVACY STATEMENT .................................................................................................71
MISCELLANEOUS ........................................................................................................71
Side Letter Arrangements..............................................................................................71
Reports to Shareholders ...............................................................................................72
Available Documents .....................................................................................................72
Principal Office; Location of Records .............................................................................72
Cayman Islands Mutual Funds Regulation ....................................................................72
EU Council Directive 2003/48/EC ..................................................................................73
Money Laundering Prevention .......................................................................................74
Inquiries.........................................................................................................................75

ANNEX A – SUBSCRIPTION AGREEMENT (NON-U.S. INVESTORS)

ANNEX B – SUBSCRIPTION AGREEMENT (U.S. TAX-EXEMPT INVESTORS)

ANNEX C – FORM ADV, PART II OF BEAR STEARNS ASSET MANAGEMENT INC.

# INTRODUCTION

Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. is a Cayman Islands exempted company (the "Fund") incorporated on April 27, 2006. The primary objective of the Fund is to seek high current income and capital appreciation relative to LIBOR. There can be no assurance that the Fund will achieve this objective or that substantial losses will not be incurred. Bear Stearns Asset Management Inc., a corporation formed under the laws of the State of New York ("BSAM"), acts as the investment manager (the "Investment Manager") to the Fund and to Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund, Ltd., an exempted company incorporated under the laws of the Cayman Islands (the "Master Fund"). BSAM is the asset management subsidiary of The Bear Stearns Companies Inc. ("BSC") and, as described further herein, is an affiliate of Bear, Stearns & Co. Inc. ("Bear Stearns"), a broker-dealer subsidiary of BSC, and of Bear Stearns Securities Corp., the Fund's prime broker and wholly-owned subsidiary of BSC. All investment and trading decisions on behalf of the Master Fund will be made by the Investment Manager.

The Fund does not currently trade directly but rather invests synthetically through a leveraged total return swap (the "Leverage Instrument") indexed generally to 2.75 times the performance of the Master Fund. Mr. Ralph Cioffi, Mr. Matthew Tannin and Mr. Ray McGarrigal are primarily responsible for directing the Investment Manager's investments for the Master Fund. The Master Fund intends to achieve its investment objective primarily through leveraged investments in investment-grade structured finance securities, although the Master Fund intends to seek investment opportunities beyond the structured finance asset category. As part of its strategy, the Master Fund intends to gain exposure, on a non-recourse leveraged basis, to investment-grade structured finance securities by means of the Master Fund's purchase of the equity securities and other securities issued by structured vehicles (such as collateralized debt obligations "CDOs") that invest, on a leveraged or unleveraged basis, primarily in investment-grade structured finance securities (such as CDOs). The Master Fund will make investments in other structured finance assets including asset-backed securities ("ABSs"), synthetic ABSs, mortgage-backed securities ("MBSs") and global structured asset securitizations. The Master Fund will make investments (or otherwise take on risk) in both the traditional "cash" market and the derivatives market. In addition, the Master Fund may invest in various derivatives, including primarily credit-default swaps, but also options, swaps, swaptions, futures and forward contracts (both listed and over-the-counter) on various financial instruments, equity securities and currencies. The Master Fund will generally operate up to a Net Leverage (as defined herein) of its investments, of 10 to 1, though the Investment Manager may use greater leverage or less leverage at times in its discretion. Master Fund positions may be financed by various sources of funding, including margin, bank lines and the repurchase markets (which may be provided by Bear Stearns or by or through an affiliate thereof). As the Fund is expected to have up to 2.75 times leveraged exposure to the Master Fund, and the Master Fund's positions in turn are expected to be highly leveraged, the Fund's Net Asset Value (as defined herein) may increase or decrease at a greater rate than if leverage were not used.

While the Investment Manager may implement a combination of the investment strategies described herein, the composition of the investment portfolio will vary as opportunities dictate, and it is not possible to predict the degree of profitability, if any, which may be achieved from any particular strategy or investment. Further, the Investment Manager may develop new strategies or modify existing strategies with a view towards achieving the Master Fund's investment objectives.

The Fund will invest substantially all of its assets synthetically through the Leverage Instrument in a "master-feeder" structure, conducting most if not all of its investment and trading activities indirectly through an investment in the Master Fund, a company formed to conduct trading activities on behalf of the Fund and other entities managed by BSAM or its affiliates. The purpose of the Master Fund is to achieve trading and administrative efficiencies. No additional fees are payable by the Fund in connection

with the Fund's investment in the Master Fund.  The Fund is responsible, as an investor in the Master Fund, for its *pro rata* share of the Master Fund's operating and overhead expenses.  Although investment and trading is currently anticipated to be only at the Master Fund level, the Investment Manager may also trade at the Fund level in the future.  References to the Fund or the Master Fund's investments and portfolio in this Memorandum refer to the combined investments and portfolio of the Fund, the Master Fund and the Other Feeder Funds (as defined below), and references to the Investment Manager and its investment strategy and operations refer to Bear Stearns Asset Management Inc., as Investment Manager of the Fund and the Master Fund, and its roles in connection with each respectively, unless the context suggests otherwise.

The Fund is offering multiple series (each, a "Series") of one or more tranches (each, a "Tranche") of redeemable, participating non-voting shares (the "Shares") as of the opening of business of the first Business Day of each calendar month and at any other time in the discretion of the Fund (each a "Subscription Date").

The Fund offers suitable investors an opportunity to diversify a portion of the risk segments of their portfolios into an investment field in which profits can be recognized in a vehicle providing limited liability and administrative convenience.

*There can be no assurance that the Fund will achieve its investment objectives or avoid substantial losses.  No investor should make an investment in the Fund with the expectation of sheltering income or receiving cash distributions.  Potential investors are urged to consult with their personal tax advisers in connection with any investment in the Fund.*

## TRANSACTION DIAGRAM



## SUMMARY OF PRINCIPAL TERMS

*The following summary is qualified in its entirety by reference to the more detailed information included elsewhere in this Confidential Offering Memorandum (the "Memorandum") and in the Memorandum and Articles of Association of each of the Fund and Master Fund. Capitalized terms used but not defined herein have the meaning set forth in the Fund's Memorandum and Articles of Association (the "Articles").*

### THE FUND

| | |
|---|---|
| THE FUND | Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. incorporated on April 27, 2006 as a Cayman Islands exempted company. |
| THE MASTER FUND | Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund, Ltd., an exempted company incorporated under the laws of the Cayman Islands. Although investment and trading is currently anticipated to be only at the Master Fund level, the Investment Manager may also trade at the Fund level in the future. The Fund will invest substantially all of its assets synthetically through the Leverage Instrument in a "master-feeder" structure, conducting most if not all of its investment and trading activities indirectly through an investment in the Master Fund, a company formed to conduct trading activities on behalf of the Fund and other entities managed by BSAM or its affiliates. From time to time, other funds or investment products (collectively, the "Other Feeder Funds") may invest in the Master Fund. As of the date hereof, such Other Feeder Funds include Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Fund, L.P., (the "U.S. Enhanced Leverage Feeder Fund"), a Delaware limited partnership organized to facilitate investment by U.S. investors that invests substantially all of its assets in the Master Fund on a synthetic leveraged basis similar to that of the Fund. References herein to the Fund in respect of its investment program and related matters include reference to the Master Fund and the Other Feeder Funds, as applicable. *See "The Investment Program".* |
| INVESTMENT MANAGER | Bear Stearns Asset Management Inc., a corporation formed under the laws of the State of New York, serves as the investment manager of each of the Fund and the Master Fund. |
| | *BSAM also operates Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (the "High-Grade Fund"), an investment vehicle which has an investment strategy similar to that of the Master Fund, but is not subject to the same investment restrictions or considerations relating to the additional leverage provided under the Leverage Instrument. Accordingly, the investment portfolio and strategies of the Master Fund may differ substantially from those of the High-Grade Fund, and past performance of the High-Grade Fund or any of its feeder funds is not necessarily indicative of the future performance of the Master Fund or the Fund.* |

4

| | |
|---|---|
| **INVESTMENT OBJECTIVE AND APPROACH** | The Fund aims to seek (primarily through its investment in the Master Fund) high current income and capital appreciation relative to LIBOR. The Fund intends to achieve its investment objective primarily through leveraged investments in investment-grade structured finance securities, although the Fund intends to seek investment opportunities beyond the structured finance asset category. As part of its strategy, the Fund intends to gain exposure, on a non-recourse leveraged basis, to investment-grade structured finance securities by means of the Master Fund's purchase of the equity securities and other securities issued by structured vehicles (such as CDOs) that invest, on a leveraged or unleveraged basis, primarily in investment-grade structured finance securities (such as CDOs). There can be no assurance that the Fund will achieve its investment objective or avoid substantial losses. |
| **LEVERAGE INSTRUMENT** | The Fund will enter into an over-the-counter, total return swap (the "Leverage Instrument") with Barclays Bank PLC as counterparty (the "Leverage Instrument Counterparty"), which references the Master Fund. (*See "The Leverage Instrument Counterparty".*) The Fund will pay the Leverage Instrument Counterparty an amount equal to substantially all of the proceeds from the issuance of the Shares (as defined below) and will receive a return indexed to an investment in the Master Fund with a targeted leverage of 2.75 times the amount invested. The Investment Manager may in its discretion reduce such leverage. The leverage inherent in the Leverage Instruments will cause a greater volatility of returns than would a direct non-leveraged investment in the Master Fund.<br><br>If the Leverage Instrument is terminated, the Investment Manager may invest the proceeds received upon termination in a swap or other instrument and with a counterparty that, in the determination of the Investment Manager, would provide the Fund with economic terms and a risk profile substantially similar to the Leverage Instrument. Following termination of the Leverage Instrument and prior to entering into any such new arrangement, the Fund may invest its assets directly in the Master Fund on an unleveraged basis. |
| **PLACEMENT AGENTS** | Bear, Stearns & Co. Inc. ("Bear Stearns"), certain of its affiliates and certain non-affiliated selling agents (collectively, "Placement Agents") may serve as placement agents with respect to Shares, subject to prior sale, when, as and if delivered, and subject to certain other conditions. |
| **ADMINISTRATOR, REGISTRAR AND TRANSFER AGENT** | PFPC Inc. (Delaware) serves as the administrator, registrar and transfer agent of the Fund, the Master Fund and the Other Feeder Funds (the "Administrator"). |
| **RISKS** | ***An investment in the Fund is speculative and involves substantial risks and conflicts of interest. Shares are suitable only for investors who can afford to lose all or a substantial portion of their investment. See "Certain Risk Factors" and "Conflicts of Interest".*** |

## THE OFFERING

| | |
|---|---|
| THE OFFERING | This Memorandum relates to an offering of shares in the Fund (the "Shares"). The Fund will offer Series of one or more Tranches of redeemable, participating non-voting Shares as of the opening of business of the first Business Day (as defined below) of each month or on such other days as the Fund may allow (each, a "Subscription Date").

There is no limit on the total amount of subscriptions that may be accepted on behalf of the Fund. No certificates will be issued for Shares. Shareholders will, however, receive written confirmation of their holdings.

The Fund must receive at least $15,000,000 in subscriptions in order for the Fund to begin operations. If such minimum subscription is not made within 120 days of the date set forth on the cover page of this Memorandum, the offering of Shares will be terminated and subscriptions cancelled.

It is expected that on the initial closing of the Fund, substantially all of the investments will be made by existing investors in Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. (the "Offshore High-Grade Fund"), an investment vehicle which has an investment strategy similar to that of the Fund, which investments will be made, directly or indirectly in exchange for an in-kind contribution of assets from the Offshore High-Grade Fund to the Fund. |
| MINIMUM INVESTMENT | The minimum initial subscription amount for each new investor in the Fund is $1,000,000. The minimum additional investment is $500,000. The Fund may accept or reject any initial and additional subscriptions and waive the minimum subscription amounts in its sole discretion (provided that the minimum initial subscription amount be not less than $50,000). |
| SUBSCRIPTION PROCEDURE | Prospective investors must complete and execute a subscription agreement (the "Subscription Agreement"), which must be delivered to the Investment Manager. Subscription Agreements must generally be received by the Investment Manager five Business Days prior to the relevant Subscription Date (or shorter period acceptable to the Investment Manager). All investors must also make arrangements with the Investment Manager for the transmission of their subscription funds two Business Days prior to the relevant Subscription Date before 5:00 p.m. (New York time) (or such shorter period acceptable to the Investment Manager). Subscription Agreements for Non-U.S. Investors and U.S. Tax-Exempt Investors are attached hereto as Annexes A and B, respectively. |

ELIGIBLE INVESTORS — The Shares are offered only to (1) non-"United States persons" (as defined under "Eligibility to Purchase Shares", herein) and (2) U.S. investors that are tax-exempt investors, "accredited investors" under U.S. Securities and Exchange Commission ("SEC") Regulation D, and "qualified purchasers" under Section 2(a)(51) of the U.S. Investment Company Act of 1940, as amended, and the regulations thereunder (the "Company Act").

AFFILIATED INVESTORS — The Investment Manager or its principals or affiliates will initially invest at least $10,000,000 in the U.S. Enhanced Leverage Feeder Fund. The Investment Manager, its principals and/or its affiliates may from time to time, directly or through other investment vehicles (including one or more investment vehicles formed for the benefit of Bear Stearns and its affiliates), invest in the Fund and/or make additional investments in the U.S. Enhanced Leverage Feeder Fund. The Investment Manager its principals and/or its affiliates are not required to maintain any investment in the Fund or the U.S. Enhanced Leverage Feeder Fund, and may withdraw its investment in the U.S. Enhanced Leverage Feeder Fund at any time without notice to Shareholders.

## FEES AND EXPENSES

ORGANIZATIONAL EXPENSES — The Master Fund will pay the expenses of organizing the Fund, the Master Fund and the U.S. Enhanced Leverage Feeder Fund and the initial offering of Shares and interests in the U.S. Enhanced Leverage Feeder Fund. Such expenses are being amortized on a straight-line basis over a period of not less than 60 months beginning as of the commencement of operations of the Master Fund unless the Master Fund Directors decide that some other amortization method shall be applied. The Master Fund Directors believe that such amortization is more equitable than requiring the initial investors of the Fund and the U.S. Enhanced Leverage Feeder Fund to bear all such organizational expenses as would otherwise be required under generally accepted accounting principles ("GAAP"). The Fund will bear, as an investor in the Master Fund, its *pro rata* share of all such organizational expenses.

ADVISORY FEE — The Fund will pay to the Investment Manager an advisory fee (the "Advisory Fee") equal to 1/12 of 2.0% of the month-end Net Asset Value (pro rated for periods of less than one month) of each Series of Shares in the Fund prior to any accrual for or payment of any Advisory Fee, Incentive Fee or redemption effected on such date (approximately a 2.0% annual rate). The Advisory Fee is payable in arrears as of the last Business Day of each calendar quarter or upon the redemption of Shares. The Fund may issue Tranches of Shares with respect to which the Advisory Fee is reduced or waived, and may permit certain Shareholders to participate in the Fund on different financial terms than other Shareholders.

INCENTIVE FEE

Unless otherwise specified in respect of a particular Tranche of Shares, as of the end of each calendar year, upon a redemption of Shares (in respect of the Shares being redeemed), and upon commencement of winding-up of the Fund (each, a "Performance Period"), the Investment Manager is entitled to receive a fee (the "Incentive Fee"), calculated separately with respect to each outstanding Series, equal to 20% of Net New Income in respect of each Series of Shares determined as of the end of each calendar year (and as of the date of any redemption of Shares of such Series). "Net New Income" in respect of a Series of Shares as of a particular date is the amount, if any, by which Cumulative Net Income in respect of such Series of Shares determined as of such date exceeds the High Water Mark in respect of such Series of Shares.

For purposes of the foregoing, "Cumulative Net Income" in respect of a Series of Shares as of a particular date is the amount, if any, by which (1) aggregate realized and unrealized gains, and aggregate items of operating income, credited to such Series of Shares during the entire life of the Fund to and including such date exceeds (2) aggregate realized and unrealized losses, and aggregate items of operating expenses, charged against such Series of Shares during the entire life of the Fund to and including such date (without charging any of the Investment Manager's Incentive Fee against such Series of Shares). "High Water Mark" in respect of a Series of Shares as of a specified date means, (1) zero, until after the first calculation of a positive Incentive Fee in respect of such Series of Shares pursuant to the foregoing provisions and, thereafter, (2) the highest amount of Cumulative Net Income previously calculated in respect of such Series of Shares in accordance with the foregoing provisions, reduced, as of any date on which redemptions are made from a Series, by an amount equal to (a) such High Water Mark multiplied by (b) a fraction, the numerator of which is equal to the amount of the redemption, and the denominator of which is equal to the Net Asset Value of the Series immediately before giving effect to the redemption.

The Incentive Fee is applied on a "high water mark" basis such that if any Series suffers a net loss in a particular Performance Period, no Incentive Fee is due to the Investment Manager with respect to such Series for such Performance Period or any subsequent Performance Period, until such net loss is first recovered (taking into account interim redemptions and distributions).

OPERATIONAL
EXPENSES

The Fund will bear its operational expenses, including (without limitation) research expenses; legal fees; expenses of the continuous offering of Shares, including the cost of producing and distributing offering memoranda and other marketing materials; printing and mailing costs; filing fees and expenses; accounting, audit, and tax preparation expenses; computer software, licensing, programming and operating expenses; data processing costs; the fees of the Fund's board of directors (the "Board of Directors"); the out-of-pocket expenses of the Directors and any consultant fees; tax, litigation, and extraordinary expenses, if any; interest expenses (including interest due to repurchase agreements and borrowing by the Fund); insurance expenses, custody fees, bank charges,

brokerage commissions (including options trades); spreads and mark-ups on securities, swaps and forwards; short dividends, currency hedging costs, if any, and other investment and operating expenses. In addition, the Fund will bear the costs associated with the Leverage Instrument, including the accrual of a financing charge of 1-month USD LIBOR plus up to 1.20% per annum, compounding monthly.

The Fund will also bear, as an investor in the Master Fund, its *pro rata* share of the Master Fund's operational expenses, including, without limitation, interest expenses (including interest due to repurchase agreements and borrowing by the Master Fund); insurance expenses, custody fees, bank charges, brokerage commissions (including options trades); spreads and mark-ups on securities, swaps and forwards, short dividends, currency hedging costs, and other investment and operating expenses, the Administrator's fee, the fees and out-of-pocket expenses of the Administrator and the Master Fund's board of directors. The Investment Manager and the Administrator will each bear the costs of providing their respective services to the Fund and the Master Fund, including their general overhead, salary, and office expenses.

SELLING COMMISSION

Bear, Stearns & Co. Inc. and certain of its affiliates, to the extent they act as Placement Agents to the Fund will be compensated by the Investment Manager with payments based upon a percentage of the Investment Manager's Incentive Fee. Certain non-affiliated Placement Agents may be paid up to 3% of an investor's subscription price for Shares. Such commission may be waived or reduced by any such Placement Agent in respect of particular investors.

BROKERAGE COMMISSIONS

The Investment Manager transacts with brokers and dealers (including its affiliates) on the basis of best execution and in consideration of such broker's or dealer's ability to effect the transactions, the facilities, reliability and financial responsibility of such broker or dealer, and the provision or payment (or rebate to the Master Fund for payment) by such broker or dealer of the costs of research and brokerage services which are of benefit to the Fund, the Master Fund, the Investment Manager and related investment vehicles and accounts. Bear, Stearns Securities Corp. ("BSSC" or the "Prime Broker") serves as prime broker and custodian for the Master Fund and clears (generally on the basis of payment against delivery) the Master Fund's securities transactions which are effected through other brokerage firms. BSSC or an affiliated entity or unit thereof (including Bear Stearns) may also execute orders to the extent permitted by applicable regulations and receive commissions, fees and other compensation in connection therewith. *See "Brokerage Practices" and "Conflicts of Interest"*.

## <u>LIQUIDITY</u>

TRANSFERABILITY

Shares may not be transferred without the prior written consent of the Directors. Shares may be redeemed as described below.

REDEMPTIONS

Subject to the conditions and limitations described herein, (i) a Shareholder may, upon not less than 40 days' prior written notice to the Fund, request that the Fund redeem all or part of such Shareholder's Shares as of the last Business Day of any calendar month subject to a redemption fee of 2% of the amount redeemed unless such redemption fee is reduced or waived by the Directors in their sole discretion and (ii) upon not less than 60 days' prior written notice to the Fund, a Shareholder may request that the Fund redeem all or part of such Shareholder's Shares attributable to a subscription as of the last Business Day of the twelfth month-end following such subscription and of every subsequent third month-end following the first year anniversary of such subscription without being subject to any redemption fee (each such date, a "Redemption Date").

Partial redemptions may not reduce a Shareholder's investment to less than the minimum investment of $1,000,000, unless such minimum is reduced or waived by the Directors in their sole discretion. If a Shareholder subscribes for Shares at different times, such Shares will be treated as a separate Series for the purpose of determining any applicable redemption fee, and redemptions will be deemed to be made from the Series of Shares subscribed for on the earliest date (as adjusted for changes in the Net Asset Value).

The redemption fees described above are payable to the Fund and are intended generally to cover anticipated expenses relating to the liquidation of Master Fund assets required to fund the relevant redemptions, including "breakage costs". The Directors may reduce or waive such redemption fees for any redeeming Shareholder to the extent that they determine in their sole discretion that the Fund will not incur such expenses or that the Fund will not otherwise be materially disadvantaged by such reduction or waiver. The Directors, however, will in no event be obligated to reduce or waive such redemption fees, including when there are no such expenses.

If, for any calendar quarter, the aggregate amount of requests for redemption from the Fund, together with withdrawal requests from the Other Feeder Funds, exceeds in value 25% of the net asset value of the Master Fund determined as of the beginning of such calendar quarter and as adjusted for subscriptions during such calendar quarter, the Investment Manager (in such capacity and as general partner, manager or sponsor of the Other Feeder Funds) may elect to limit such redemptions and withdrawals to an aggregate value of not more than 25% of the net asset value of the Master Fund, allocating such redemptions and withdrawals *pro rata* according to the value of the Shares owned by each Shareholder requesting a redemption of Shares and the value of the capital accounts/units of each investor requesting a withdrawal from the Other

10

Feeder Funds at such time.  Any unhonored portion of a redemption request will remain invested in the Fund, and will be deferred to the next Redemption Date subject to the same limitation.

Redemption proceeds (based on unaudited data) will generally be paid within 30 days of the relevant Redemption Date.  However, upon a redemption in full of a Shareholder's Shares (and after the application of all charges and credits properly allocable to such Shareholder's Shares), such Shareholder will be entitled to receive 90% of such redemption proceeds within 30 days of the relevant Redemption Date, and the balance (based on unaudited data) without interest will be paid within 60 days of such Redemption Date. Any amount subject to the foregoing "hold-back" will not remain subject to the profit/loss of the Fund following the Redemption Date.   The Fund may waive the foregoing hold-back provisions in its sole and absolute discretion and permit the full redemption of any Shareholder's Shares to be made generally within 30 days of the effective date of redemption.  Upon certain circumstances, the Fund may limit or suspend redemptions and/or delay payment of redemption proceeds to redeeming Shareholders.

Generally, no interest will be paid by the Fund on redemption amounts pending distribution to Shareholders.

The Fund may establish reserves for contingencies, reducing the amount of redemption proceeds upon a redemption.

**MANDATORY REDEMPTIONS**

The Directors may compel the redemption of any Shareholder from the Fund, in whole or in part, at any time without notice, if the Directors reasonably believe that such Shareholder subscribed for Shares as a result of a misrepresentation or if such Shareholder's continued participation in the Fund would, in the reasonable judgment of the Directors, put the Fund or the other Shareholders at a material tax, legal, regulatory, or pecuniary disadvantage including, by way of example and not limitation:  (i) causing the Fund to be required to be registered or regulated under the Company Act; (ii) causing the assets of the Fund to be deemed to be "plan assets" for purposes of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"); (iii) causing the Fund to be registered under the U.S. Securities Exchange Act of 1934 (the "Exchange Act"), or the offering of its Shares registered under the U.S. Securities Act of 1933 (the "Securities Act"); (iv) causing the Investment Manager to be required to be registered with the Commodity Futures Trading Commission ("CFTC") as a "commodity pool operator" and become a member of the National Futures Association ("NFA") (if the Investment Manager is not then so registered and/or such a member); (v) causing a violation under any law or any contractual provision to which the Fund or its property or the Investment Manager is subject; or (vi) causing the Fund to be in violation of (in the reasonable judgment of the Directors), to potentially violate or otherwise cause concerns under, the anti-money laundering program and related responsibilities of the Fund or the Investment Manager.  In addition to the foregoing, the

11