# BEAR STEARNS
# HIGH-GRADE STRUCTURED CREDIT STRATEGIES
# ENHANCED LEVERAGE (OVERSEAS) LTD.
### (A Cayman Islands Exempted Company)

**(FOR USE BY INVESTORS IN BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES (OVERSEAS) LTD., THAT WISH TO EXCHANGE ALL OR A PORTION OF THEIR SHARES THEREOF FOR SHARES OF THE FUND)**

SUBSCRIPTION AGREEMENT

for

Redeemable Participating Non-Voting Shares

(For Non-U.S. Investors)

**BEAR STEARNS ASSET MANAGEMENT INC.**
*Investment Manager*
383 Madison Avenue
New York, New York 10179
United States of America
Attention: Alternative Fund Services
Telephone: 212-272-1630
Facsimile: 917-849-3018

# BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE (OVERSEAS) LTD.

## SUBSCRIPTION AGREEMENT
### (For Non-U.S. Investors)

Prospective Non-U.S. Investors should complete the following steps prior to the intended date of subscription:

1. Please complete the attached Subscription Agreement and send a facsimile copy thereof to the Investment Manager at 917-849-3018 **by July 21, 2006** so that the Investment Manager may determine whether the prospective investor is eligible to subscribe for Shares.

> Any questions can be answered by contacting:
>
> **Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd.**
> c/o Bear Stearns Asset Management Inc.
> 383 Madison Avenue
> New York, New York 10179
> United States of America
> Attention: Alternative Fund Services
> Telephone: 212-272-1630
> Facsimile: 917-849-3018
> E-mail: Bearhedgefunds@bear.com
>
> Matthew Tannin
> Bear Stearns High-Grade Structured Credit Strategies
> Portfolio Manager
> mtannin@bear.com
> 212-272-3118

2. In order to exchange shares of Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. (the "High-Grade Fund"), please complete the Share Exchange Agreement attached as Appendix I to the Subscription Agreement. The intended subscription amount (the "Subscription Amount") will be deemed paid upon the exchange of your shares to the extent of your redemption from the High-Grade Fund.

3. Upon acceptance of the subscription, a copy of the executed Subscription Agreement signed as accepted on behalf of the Fund will be returned to the investor.

4. Any investor that requests the Fund to make any payments to an address located within the United States or by wire transfer to an account maintained in the United States shall be required to provide the Fund with an IRS Form W-8BEN (Certification of Foreign Status of Beneficial Owner), IRS Form W-8IMY (Certification of Foreign Intermediary Status), or IRS Form W-8ECI (Certification of Foreign Person's Claim for Exemption from Withholding on Income Effectively Connected with Conduct of a U.S. Trade or Business), as appropriate.

If requested by the Investment Manager or the Administrator, each prospective investor that is an entity must provide evidence that the constitutional documents of the prospective investor permit it to make investments in securities such as Shares of the Fund, and that all appropriate actions have been taken by the intended subscriber to authorize the investment.

An Investor who, following the initial closing of the Fund, wishes to make an additional subscription for Shares must submit a dated and executed "Additional Shares Subscription Agreement," a form of which may be obtained from the Investment Manager upon request.

If the prospective investor is not a qualified investor or if the prospective investor does not wish to subscribe for Shares of the Fund, please return all of the enclosed documents to the above address. The enclosed documents may not be reproduced, duplicated, or delivered to any other person.

113



# BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE (OVERSEAS) LTD.

## SUBSCRIPTION AGREEMENT
### (For Non-U.S. Investors)

**Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd.**
c/o Bear Stearns Asset Management Inc.
383 Madison Avenue
New York, New York 10179
United States of America
Attention: Alternative Fund Services

Ladies and Gentlemen:

The offer and sale of Redeemable Participating Non-Voting Shares (the "Shares") in Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (the "Fund"), an exempted company with limited liability organized in the Cayman Islands under the provisions of The Companies Law (2004 Revision), to each non-U.S. investor (the "Investor") is not being registered under the securities laws of any jurisdiction and is being made privately to eligible investors on the basis of the Confidential Offering Memorandum of the Fund dated June 30, 2006 as the same may be updated or modified from time to time (the "Memorandum"). Terms used herein without definition are as used or defined in the Memorandum.

The Investor understands that the information requested in this Subscription Agreement is needed in order to ensure compliance with the applicable laws and regulations, including, but not limited to applicable anti-money laundering laws and regulations. The Fund and the Investment Manager do not disclose nonpublic personal information about investors or former investors to third parties other than as described in the Memorandum. Internal policies are in place to protect confidentiality, while allowing investor needs to be served. Only individuals who need to do so in carrying out their job responsibilities may access investor information. The Fund and the Investment Manager maintain physical, electronic, and procedural safeguards that comply with federal standards to protect confidentiality. These safeguards extend to all forms of interaction with the Fund and the Investment Manager, including the Internet.

The Investor also understands that the Investor (and each employee, representative, or other agent of the investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of (i) the Fund and (ii) any of its transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Investor relating to such tax treatment and tax structure. This authorization of tax disclosure is retroactively effective to the commencement of the first discussions between the Fund or its representatives and the Investor regarding the transactions completed herein.

References to the Fund or the Master Fund's investments and portfolio in the Memorandum and this Subscription Agreement refer to the combined investments and portfolio of the Fund and the Master Fund, and references to the Investment Manager and its investment strategy and operations refer to Bear Stearns Asset Management Inc., as Investment Manager of the Fund and the Master Fund, and its roles in connection with each respectively, unless the context suggests otherwise.

4

114

The Investor hereby agrees as follows:

## I    SUBSCRIPTION FOR SHARES.

**Subscription Amount:**
Please specify whether you wish to request the redemption of all or a portion of your shares in the High-Grade Fund as of the Transaction Effective Date (as defined in the Share Exchange Agreement) and to contribute the proceeds of such redemption to the Fund as of the Transaction Effective Date in exchange for Shares of the Fund having a value equal to the value of the redeemed portion of your shares in the High-Grade Fund immediately prior to the effectiveness of such redemption.

ALL or _____ %

(A)    Each Class of Shares will be offered in different series (each, a "Series") on the opening of business on the first business day of each month (each a "Subscription Date"). Shares will be sold at $1,000 per Share. The Investor agrees to become a Shareholder of the Fund and in connection therewith subscribes for and agrees to make the investment for the number of Shares (including fractional Shares) of each Class indicated on page 2 hereof which can be purchased with the Subscription Amount indicated on page 2 hereof at the subscription price described above, and to pay the amount set forth on page 2 hereof with respect to such Shares, on the terms provided for herein and in the Share Exchange Agreement attached as Appendix I to this Subscription Agreement (the "Share Exchange Agreement"), and in the Memorandum, and the Fund's Memorandum and Articles of Association (the "Articles" and collectively with the Memorandum, the "Fund's Documents").

(B)    The minimum initial subscription amount is $1,000,000, and the minimum additional investment is $500,000, subject to the discretion of the Fund to accept lesser amounts (but in no event less than $50,000 in the case of new investors). The Investor agrees to, and understands, the terms and conditions upon which the Shares are being offered, including, without limitation, the risk factors referred to in the Memorandum.

(C)    The Investor understands and agrees that the Fund reserves the right to reject this subscription for the Shares for any reason or no reason, in whole or in part, and at any time prior to acceptance thereof.

(D)    This Subscription Agreement is and shall be irrevocable. Upon acceptance of this subscription by the Fund, the Investor shall be a shareholder of the Fund (as so admitted, hereinafter sometimes individually referred to as a "Shareholder" and collectively with the other shareholders as the "Shareholders").

## II    PAYMENT BY THE INVESTOR

The Investor will be deemed to have paid for its Shares upon redemption of the relevant number of shares of the High-Grade Fund, as provided in the Share Exchange Agreement.

## III    ELIGIBILITY REPRESENTATIONS OF THE INVESTOR

(A)    Eligibility Representations

In connection with the Investor's subscription for shares of the High-Grade Fund, the Investor completed a subscription agreement and hereby reaffirms all representations, warranties, declarations, information provided and statements contained in Investor's prior subscription agreement and all other related documentation for subscription for shares of the High-Grade Fund relating to the Investor's eligibility to invest in the Fund, including the Investor's status as not a "U.S. Person" and agrees that such representations, warranties, declarations and statements and warranties may be used as a defense in any actions relating to the Fund or the offering of the Shares, and that it is only on the basis of such representations and warranties that the Investor's subscription for Shares will be accepted.

The Investor has not experienced a material adverse change in financial condition or other development since the date of completion of its subscription agreement for shares of the High-Grade Fund that might make an investment in the Fund unsuitable.

5

(B)    Restrictions on the Purchase and Sale of "New Issues" - "Restricted Person" Status

To enable the Fund to purchase certain new issues of equity securities ("NASD-New Issues"), the Fund is required to restrict certain persons ("Restricted Persons") from participating in the gains and losses attributable to the purchase of NASD-New Issues. Initial the appropriate space below to certify whether the Investor constitutes a Restricted Person. The Investor must also complete Exhibit A.

Under the "Restrictions on the Purchase and Sale of 'New Issues'" Rule of the National Association of Securities Dealers, Inc, Conduct Rule 2790 (see Exhibit A), the Investor is:

Restricted            Non-Restricted by Exemption            Pure Non-Restricted

If the Investor does not check any boxes and does not complete Exhibit A, the Investor will be treated as "Restricted."

## IV    REPRESENTATIONS AND COVENANTS OF THE INVESTOR

(A)    In connection with the Investor's subscription for shares of the High-Grade Fund, the Investor completed a subscription agreement and hereby reaffirms all representations, warranties, declarations, information provided and statements contained in the Investor's prior subscription agreement and all other related documentation for subscription for shares of the High-Grade Fund that are not uniquely relevant to its investment in the High-Grade Fund, and agrees that such representations, warranties, declarations and statements and warranties may be used as a defense in any actions relating to the Fund or the offering of the Shares, and that it is only on the basis of such representations and warranties that the Investor's subscription for Shares will be accepted.

(B)    The Investor understands, acknowledges and agrees that:

(1)    it has not and will not acquire the Shares in the United States;

(2)    it is not now, and for as long as it owns the Shares it will not be, a U.S. Person (as described above);

(3)    that, except with the consent of the Fund, the Investor will not resell, reoffer, or transfer any Shares or any interest therein to any U.S. Person or enter into any swap or other derivative transaction with respect to the Shares with any U.S. Person;

(4)    the Investor will not resell, reoffer, assign, transfer or otherwise dispose of, by gift or otherwise, any of its Shares to a Japanese person who is not a "qualified institutional investor" as that term is defined in the Securities and Exchange Law of Japan.

(5)    the Shares subscribed for hereunder have not been, and will not be, registered under the U.S. Securities Act of 1933 (the "Securities Act"), or any other law of the United States or any state or any other jurisdiction thereof;

(6)    reoffers, resales, or any transfer (whether by sale assignment, gift, exchange, pledge, mortgage, or other hypothecation, or any other conveyance, disposition or encumbrance, whether voluntary or involuntary) of the Shares may be made only in compliance with applicable securities laws and only with the prior authorization of the Board of Directors which may, in its discretion, decline to issue any Shares to, or register Shares in the name of, any person;

(7)    (a) Shareholders are subject to significant restrictions on their ability to redeem all or any portion of their Shares, including, generally, a one-year lock-up period applicable to each subscription for Shares, additional notice periods for each redemption, gates, and the rights of the Directors to suspend or limit redemption rights, and, (b) additionally, the

6

proceeds of any redemption may generally be paid up to 30 days after the effective Redemption Date, subject to additional hold-back periods and the suspension rights of the Directors, as provided in the Articles;

(8)     it will not assign, transfer or otherwise dispose of, by gift or otherwise, any of its Shares except on the books of the Fund and with the prior written consent of the Board of Directors; and

(9)     the Fund may compel the redemption of the Investor's Shares, in whole or in part, in such circumstances, at such times and with such notice or no notice, as described in the Memorandum under "Redemptions" or as provided in the Articles.

(C)     The Investor has received and read a copy of the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks, conflicts of interest, and expenses of an investment in the Fund. The Investor acknowledges that in making a decision to subscribe for Shares the Investor has relied solely upon the Memorandum, the Fund's Documents, the most recent annual report and accounts of the Fund (if any) and (where applicable) the most recent unaudited monthly report, and independent investigations made by the Investor. The Investor understands the investment objectives and policies of, and the investment strategies which may be pursued by, the Fund. The Investor's investment in the Shares is consistent with the investment purposes and objectives, and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

(D)     The Investor has carefully reviewed and understands the various risks of an investment in the Fund, including those summarized under "Certain Risk Factors" and described in greater detail elsewhere in the Memorandum; the undersigned understands that an investment in the Fund is speculative and the undersigned can afford to bear the risks of an investment in the Fund, including the risk of losing the undersigned's entire investment. The undersigned understands that redemption rights are limited and may be suspended as described in the Memorandum.

(E)     The Investor understands that the Investment Manager, the Master Fund and the Fund are subject to conflicts of interest, including those summarized under "Conflicts of Interest" in the Memorandum.

(F)     The Investor authorizes and approves the Board of Directors or such other advisory party established by the Directors in accordance with the Articles of Association to act as the Shareholders' representative and agent and to give or withhold consent to any transaction submitted to the Board of Directors or such other advisory party. Without limiting the foregoing, the undersigned hereby acknowledges that, by executing this Subscription Agreement, it consents to the foregoing consent authority of the Board of Directors or such other advisory party. In particular, the undersigned consents and agrees that, if any transaction, including any transaction effected between the Fund or the Master Fund and the Investment Manager or its affiliates, shall be subject to the disclosure and consent requirements of Section 206(3) of the U.S. Investment Advisers Act of 1940, as amended, such requirements shall be satisfied with respect to the Fund and all Shareholders if disclosure shall be given to, and consent obtained from, the Board of Directors or such other advisory party. The undersigned agrees that neither the Fund nor the Investment Manager shall have any liability for entering into any transaction for which consent has been received or for not entering into any transaction for which consent has been withheld.

(G)     The Investor has received a copy of the Form ADV Part II of the Investment Manager, which is annexed to the Memorandum as an Exhibit, at least 48 hours prior to entering into this Subscription Agreement.

(H)     The Investor has been furnished all materials relating to the Fund, the Investment Manager, the actual operations of each of the foregoing, the private placement of the Shares and any other related matters which the undersigned has requested; the Investment Manager has answered all inquiries that the Investor has put to them relating thereto; and the Investor has been afforded the opportunity to ask questions and obtain any additional information necessary to verify the accuracy of any representation or information set forth in the Memorandum.

7

(I)     The Investor has not reproduced, duplicated, or delivered the Memorandum or this Subscription Agreement to any other person, except to the Investor's professional advisors or as instructed by the Fund.

(J)     The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Shares and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the Fund or its authorized representatives to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Shares and has determined that the Shares are a suitable investment for the Investor.

(K)     The Investor can afford a complete loss of the investment in the Shares, can afford to hold the investment in the Shares for an indefinite period of time, and acknowledges that distributions, including, without limitation, the proceeds of redemptions, may be paid in cash or in kind.

(L)     The Investor is acquiring the Shares subscribed for herein for investment purposes only and not with a view to distribution or resale of such Shares.

(M)     The Investor understands the method of compensation described in the Memorandum and its risks, including that:

     (1)     the Incentive Fee may create an incentive for the Investment Manager to cause the Fund to make investments that are riskier or more speculative than would be the case in the absence of the Incentive Fee; and

     (2)     the Investment Manager may receive increased compensation since the Incentive Fee will be calculated on a basis which includes realized and unrealized appreciation.

(N)     The Investor understands that the value of an Investor's Shares, and the performance of the Fund, may be based on unaudited and, in some cases, estimated valuations of the Fund's investments and that any valuation provided in the Investor's account statement may be an unaudited, estimated value.

(O)     The Investor has consulted with its own advisors and is fully informed as to the legal and tax requirements within the Investor's own country (countries) regarding a purchase of the Shares.

(P)     The Investor agrees and is aware that:

     (1)     the Fund has no operating history;

     (2)     no government agency has passed upon the Shares or made any findings or determination as to the fairness of this investment;

     (3)     there are substantial risks of loss of investment incidental to the purchase of the Shares, including those summarized in the Memorandum; and

     (4)     certain placement agents unaffiliated with the Investment Manager may be paid up to 3% of an investor's subscription price for Shares.

(Q)     If the Investor is an individual, he hereby represents and warrants that he is over 18 years of age. The Investor represents and warrants that the execution, delivery, and performance by the Investor of this Subscription Agreement are within the powers of the Investor, have been duly authorized, and will not constitute or result in a breach or default under or conflict with any order, ruling, or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which the Investor is a party or by which the Investor is bound, and, if the Investor is not an individual, will not violate any provisions of the incorporation papers, by-laws, indenture of trust, or partnership agreement, as may be applicable, of the Investor. The signature on this Subscription Agreement is genuine, and the signatory, if the Investor is an individual, has legal competence and capacity to execute the same, or, if the Investor is not an individual, the signatory has been duly

8



authorized to execute the same, and this Subscription Agreement constitutes a legal, valid, and binding obligation of the Investor, enforceable in accordance with its terms.

(R)     The Investor understands that:

(1)     in order to comply with regulations aimed at the prevention of money laundering, the Fund or the Investment Manager or the Administrator on its behalf will require verification of identity from all Investors or transferees of the Shares to the extent required under the Money Laundering Regulations (2005 Revision) of the Cayman Islands, as amended (the "Regulations") or any applicable U.S. federal or state laws and regulations;

(2)     the Fund or the Investment Manager or the Administrator on its behalf reserves the right to request such information as is necessary to verify the identity of the Investor. The Fund or the Investment Manager or the Administrator on its behalf also reserves the right to request such identification evidence in respect of a transferee of Shares;

(3)     in the event of delay or failure by the Investor or transferee to produce any information required for verification purposes, the Fund or the Investment Manager on its behalf may refuse to accept the subscription or (as the case may be) to register the relevant transfer and (in the case of a subscription of Shares) any funds received will be returned without interest to the account from which the monies were originally debited; and

(4)     if, as a result of any information or other matter which comes to the attention of any person resident in the Cayman Islands (including the Fund and its Board of Directors ("Directors")), such person knows or suspects that another person is engaged in money laundering, such person is required to report such information or other matter pursuant to the Proceeds of Criminal Conduct Law (2005 Revision) of the Cayman Islands and such report shall not be treated as a breach of any restriction upon the disclosure of information imposed by law or otherwise.

(S)     The Investor hereby represents that to the best of the Investor's knowledge, the money that the Investor seeks to invest is not derived from any criminal enterprise or activity.

(T)     Redemption requests may be submitted in the form of an "Irrevocable Request for Redemption," a form of which may be obtained from the Investment Manager upon request. Any redemption proceeds paid to it will be paid to the account specified by the Investor in such Irrevocable Request for Redemption.

(U)     The Investor hereby represents that neither the Investor, nor any owner holding 10% or more of the Investor's equity, nor any senior management official of the Investor (director or executive officer or similar official), nor any affiliate of the Investor, is included on either of the following lists or is a senior political figure or an immediate family member or close associate of a senior political figure[1]:

•     the Office of Foreign Assets Control list of foreign nations, organizations and individuals subject to economic and trade sanctions, based on U.S. foreign policy and national security goals (please see http://www.treas.gov/ofac/);

---

[1] A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military, or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business, or other entity that has been formed by, or for the benefit of, a senior foreign political figure. "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children, and in-laws. A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

9

• Executive Order 13224, which sets forth a list of individuals and groups with whom U.S. persons are prohibited from doing business because such persons have been identified as terrorists or persons who support terrorism (please see http://www.treas.gov/terrorism.html).

(V)    If the Shares are to be held by joint applicants, the Investors hereby direct that on the death of any one of the Investors, the Shares shall be held in the name of, and to the order of, the survivor(s) of us or the executor or manager of the survivor(s).

(W)    The Investor hereby agrees that the Investment Manager, the Administrator and the Fund are hereby authorized and instructed to accept and execute any instructions (including but not limited to any instructions regarding subscriptions or redemptions of Shares or any payments in relation to same or otherwise) in respect of Shares in the Fund, given by the Investor in written form, by facsimile, or by telephone. If the instructions are given by the Investor by facsimile or by telephone, the Investor undertakes to confirm them in writing. The Investor understands that the Investment Manager, the Administrator and the Fund may rely conclusively upon, and shall incur no liability in respect of, any action taken upon any notice, consent, request, instruction, or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

(X)    The Investor is not required to be registered with the Commodity Futures Trading Commission (the "CFTC") or to be a member of the National Futures Association (the "NFA") or, if required to be so, the Investor is duly registered with the CFTC and a member in good standing of the NFA. It is an NFA requirement that the Investment Manager attempt to verify that any entity which seeks to purchase Shares be duly registered with the CFTC and a member of the NFA, if required. The Investor agrees to supply the Investment Manager with such information as the Investment Manager may reasonably request in order to attempt such verification.

(Y)    The Investor, if not a benefit plan investor, as described in Section V(A) below, on the date this Subscription Agreement is signed, agrees to notify the Investment Manager immediately if the Investor becomes a benefit plan investor.

(Z)    All information which the Investor has provided to the Fund concerning the Investor, the Investor's status, financial position, and knowledge and experience of financial, tax, and business matters or the knowledge and experience of financial, tax, and business matters of the person making the investment decision on behalf of the Investor, is correct and complete as of the date set forth herein.

## V    BENEFIT PLAN INVESTORS

(A)    The Memorandum states that the Directors intend to limit investment by "benefit plan investors" to less than 25% of the value of each class of equity interests of the Fund (not including investments by the Investment Manager, certain other persons and their respective affiliates). To help the Investment Manager determine whether investment by the Investor is included in the 25% limitation, the Investor has checked the appropriate box below to specify whether or not the Investor is a benefit plan investor. The term "benefit plan investor" refers to (i) any "employee benefit plan" as defined in the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), regardless of whether it is subject to ERISA, (ii) any "plan" as defined in Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), regardless of whether it is subject to Section 4975 of the Code, and (iii) any entity deemed for any purpose of ERISA or Section 4975 of the Code to hold assets of any such employee benefit plan or plan due to investments made in such entity by such employee benefit plans and plans. Benefit plan investors include, but are not limited to, corporate pension and profit sharing plans, "simplified employee pension plans," KEOGH plans for self-employed individuals (including partners), individual retirement accounts, medical benefit plans, life insurance plans, church plans, governmental plans, foreign plans, bank commingled trust funds, or insurance company separate accounts, for such plans and accounts, and, under certain circumstances, all or a portion of the general account of an insurance company.

The Investor (including any third party on behalf of which the Investor is investing)

_____ is

_____ is not

a "benefit plan investor" as defined above.

If the Investor (including any third party on behalf of which the Investor is investing) is a "benefit plan investor," is the Investor subject to ERISA or Section 4975 of the Code?

_____ Yes

_____ No

(B)    The Investor agrees to notify the Investment Manager immediately if the above answers change.

(C)    If the Investor is, or is acting on behalf of, an "employee benefit plan," as defined in and subject to ERISA, or any "plan," as defined in and subject to Section 4975 of the Code (a "Plan"), the individual signing this Subscription Agreement on behalf of the Investor, in addition to the representations and warranties set forth above, hereby further represents and warrants as, or on behalf of, the fiduciary of the Plan responsible for purchasing the Shares (the "Plan Fiduciary") as follows: (1) the Plan Fiduciary has considered an investment in the Fund for such Plan in light of the risks relating thereto; (2) the Plan Fiduciary has determined that, in view of such considerations, the investment in the Fund is consistent with the Plan Fiduciary's responsibilities under ERISA; (3) the Plan's investment in the Fund does not violate and is not otherwise inconsistent with the terms of any legal document constituting the Plan or any trust agreement thereunder; (4) the Plan's investment in the Fund has been duly authorized and approved by all necessary parties; (5) none of the Directors of the Fund or the Master Fund, the Investment Manager, the Administrator, the Prime Broker and Custodian of the Fund or the Master Fund, Bear, Stearns International Limited ("BSIL"), Barclays Bank PLC, BSC, Bear Stearns, Stone Tower Debt Advisors LLC, Dresdner Bank AG London Branch, any Placement Agent, any of their respective affiliates or any of their respective agents or employees: (a) has investment discretion with respect to the investment of assets of the Plan used to purchase the Shares; (b) has authority or responsibility to or regularly gives investment advice with respect to the assets of the Plan used to purchase the Shares for a fee and pursuant to an agreement or understanding that such advice will serve as a primary basis for investment decisions with respect to the Plan and that such advice will be based on the particular investment needs of the Plan; or (c) is an employer maintaining or contributing to the Plan; and (6) the Plan Fiduciary (a) is authorized to make, and is responsible for, the decision to invest in the Fund, including the determination that such investment is consistent with the requirement imposed by Section 404 of ERISA that Plan investments be diversified so as to minimize the risks of large losses, (b) is independent of the Directors of the Fund or the Master Fund, the Investment Manager, the Administrator, the Prime Broker and Custodian of the Fund and the Master Fund, BSIL, Barclays Bank PLC, BSC, Bear Stearns, Stone Tower Debt Advisors LLC, Dresdner Bank AG London Branch, each Placement Agent and each of their respective affiliates, and (c) is qualified to make such investment decision. The Investor will, at the request of the Directors or the Investment Manager, furnish the Investment Manager with such information as the Investment Manager may reasonably require to establish that the purchase of the Shares by the Plan does not violate any provision of ERISA or the Code, including without limitation, those provisions relating to "prohibited transactions" by "parties in interest" or "disqualified persons" as defined therein.

(D)    If the Investor is, or is acting on behalf of, an "employee benefit plan" as defined in ERISA or a "plan" as defined in Section 4975 of the Code, initial the space that applies to the subscriber:

_____    Neither the Investor, nor any of the employee benefit plans or plans on whose behalf the Investor is acting, is subject to Title I of ERISA or is subject to Section 4975 of the Code.

_____    One of the following prohibited transaction exemption applies and will continue to apply while the benefit plan investor owns Shares of the Fund (please initial the applicable exemption):

11

———— Prohibited Transaction Class Exemption ("PTCE") 84-14 applicable to certain transactions involving qualified professional asset managers.

———— PTCE 96-23 applicable to certain transactions involving in-house asset managers.

———— PTCE 90-1 applicable to certain transactions involving insurance company pooled separate accounts.

———— PTCE 91-38 applicable to certain transactions involving bank collective investment funds.

———— PTCE 95-60 applicable to certain transactions involving insurance company general accounts.

———— The Investor has determined that neither it, nor any of the employee benefit plans or plans on whose behalf the subscriber is acting, has any relationship, nor will it have any relationship during the time it holds Shares, to Barclays Bank PLC or any of its affiliates that would cause the Fund to be a "party in interest" or "disqualified person" with respect to such subscriber or such employee benefit plans or plans.

**VI      GENERAL**

(A)      The Investor acknowledges that, as described in the Memorandum, the Fund or the Master Fund, as applicable, will exculpate, indemnify, and hold harmless each of (i) the Directors of the Fund, and their officers and agents, under the Articles, (ii) the Investment Manager, under both the Fund and Master Fund Investment Management Agreements and (iii) the Master Fund Directors, and their officers and agents under the Articles of Association of the Master Fund, in each case from and against various losses incurred in connection with their services to the Fund or the Master Fund, as applicable, subject to applicable law.

(B)      This Subscription Agreement (1) shall be binding upon the Investor and the heirs, legal representatives, successors, and permitted assigns of the Investor and shall inure to the benefit of the Fund and its successors and assigns, (2) shall be governed, construed, and enforced in accordance with the laws of the Cayman Islands, and (3) shall survive the acceptance of the Investor as a Shareholder.

(C)      The Investor hereby agrees that any suit, action, or proceeding with respect to this Subscription Agreement and any or all transactions relating hereto and thereto may be brought in the courts of the Cayman Islands. The Investor hereby irrevocably submits to the jurisdiction of such courts with respect to any such suit, action, or proceeding and agrees and consents that service of process as provided by Cayman Islands law may be made upon the Investor in any such suit, action, or proceeding brought in any of said courts, and may not claim that any such suit, action, or proceeding has been brought in an inconvenient forum. The Investor hereby further irrevocably consents to the service of process out of any of the aforesaid courts, in any such suit, action, or proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to the Investor at the address of the Investor then appearing on the records of the Fund. Nothing contained herein shall affect the right of the Fund to commence any suit, action, or proceeding or otherwise to proceed against the Investor in any other jurisdiction or to serve process upon the Investor in any manner permitted by any applicable law in any relevant jurisdiction.

(D)      The Investor agrees to exculpate and indemnify and hold harmless the Fund, the Investment Manager, the Administrator, the Directors, and each other person, if any, who controls or is controlled by any of them, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage, and expense whatsoever (including, but not limited to, any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of or based upon (1) any false representation or warranty or breach or failure by the Investor to comply with any covenant or agreement made by the Investor in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction, (2) delay or failure by the

12



Investor to disclose any relevant details or provide the Fund or the Investment Manager with all the information requested by any of them, or (3) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor. The Investor also agrees to indemnify and hold harmless the Investment Manager, the Administrator and the Fund against any loss of any nature whatsoever arising to any of them as a result of either of them acting upon facsimile or telephone instructions given by the Investor.

(E)    If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent, the provisions hereof shall be severable.

## VII    TRUSTEE, AGENT, REPRESENTATIVE, OR NOMINEE

If the Investor is acting as trustee, agent, representative, or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties, and agreements made herein are made by the Investor (A) with respect to the Investor *and* (B) with respect to the Beneficial Owner of the Shares subscribed for hereby. The Investor further represents and warrants that (1) it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement, (2) it has performed appropriate due diligence to determine the identity of the Beneficial Owner, and Investor's beneficial owners, if applicable, and will provide the results of such due diligence to the Fund upon request, and (3) it believes that entering into a financial relationship with the Fund will not cause the Fund to contravene any U.S. federal, state, or foreign laws and regulations relating to prevention of money laundering. The Investor also agrees to indemnify the Investment Manager, the Administrator, the Fund and the Fund's Directors, and each of their officers, and agents for any and all costs, fees, and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's or the Beneficial Owner's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner of the Shares subscribed for hereby to enter into this Subscription Agreement or perform the obligations hereof.

## VIII    ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The Fund may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold Shares or to enable the Fund to determine its compliance with applicable regulatory requirements or tax status, and the Investor shall provide such information as may reasonably be requested.

Each person acquiring Shares of the Fund must satisfy the foregoing, both at the time of subscription and at all times thereafter, until such person ceases to be a Shareholder. Accordingly, the Investor agrees to notify the Fund promptly if there is any change with respect to any of the foregoing information or representations and to provide the Fund with such further information as the Fund may reasonably require.

13

IN WITNESS WHEREOF, the Investor has executed this Subscription Agreement as of the date set forth below.

Date: _____, 200__

For individual Investors:                          Investors other than individuals:


_____          _____
Signature                                          (*please type name of investor*)


_____          By: _____
(*please type name*)                               Signature


                                                   _____
                                                   (*please type name of signatory*)


                                                   Title: _____


**For Fund Use Only**

Do not write below this point

Pursuant to the Memorandum and Articles of Association, the Subscription for Shares is hereby accepted and the Investor is hereby admitted as a Shareholder as of _____, 200__.


                        By: BEAR STEARNS ASSET MANAGEMENT INC.,
                            Investment Manager

                        By:    _____
                        Name:
                        Title:


14



**EXHIBIT A**

## NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
### NASD CONDUCT RULE 2790
### "RESTRICTIONS ON THE PURCHASE AND SALE OF 'NEW ISSUES'"

TO ENABLE THE FUND TO PURCHASE CERTAIN PUBLICLY-OFFERED SECURITIES ("NASD-NEW ISSUES"), THE FUND MUST DETERMINE WHETHER THE INVESTOR IS "RESTRICTED" OR "UNRESTRICTED" UNDER APPLICABLE RULES OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ("NASD").

*The participation of "Restricted" Persons in the profit or loss from "NASD-New Issues" (i.e., initial public offerings of equity securities) may be limited; "Non-Restricted Persons Based on Exemption" will be able to participate despite being classified as "Restricted Persons" due to an applicable NASD exemption; and "Pure Non-Restricted Persons" may participate in all profits or losses from "New Issues" acquired by the Fund.*

NOTE:

- If the Investor initials a category in Section I *"Restricted Persons"* AND does not initial a category in Section II *"Non-Restricted Persons Based On Exemption,"* then the Investor will be a "Restricted Person."

- If the Investor initials a category in each of Sections I and II (or fits under an exemption under Section II, and does not fit under Section I), the Investor will be a Non-Restricted Person.

- If the Investor initials Section III *"Pure Non-Restricted Persons,"* the Investor should NOT check any box in Sections I or II.

### *I. Restricted Persons*

Please initial each category below that applies to the Investor:

#### *Broker/Dealers and Banks*

————    a.    A member of the NASD, or a domestic or foreign broker/dealer, acting for its own account.

————    b.    A domestic or foreign bank, broker/dealer, investment adviser or other conduit acting for the account of any person included in paragraph (a) or (c) to (j) below.

#### *Broker/Dealer Personnel*

————    c.    (i) an officer, director, general partner, associated person,* or employee of any NASD member or of any domestic or foreign broker/dealer (other than a limited business broker/dealer); (ii) any agent of any NASD member or any other broker/dealer (other than a limited business broker/dealer) that is engaged in the investment banking or securities business; or (iii) an immediate family member** of any of the foregoing persons, provided that any such person (a) materially supports, or receives material support from, the immediate family member, (b) is employed by or associated with an

---

* The NASD By-Laws define a person "associated with a member" as a natural person who is registered or has applied for registration under the Rules of the NASD as well as every sole proprietor, partner, officer, director or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any person is registered or exempt from registration with the NASD.

** The term "immediate family member" means a person's (i) parents, mother-in-law or father-in-law, spouse, brother or sister, brother-in-law or sister-in-law, son-in-law or daughter-in-law and children and (ii) any other individual to whom the person provides material support. The term "material support" means directly or indirectly providing more than 25% of a person's income in the prior calendar year. Members of the immediate family living in the same household are deemed to be providing each other with material support.

Ex. A-1

NASD member, or an affiliate of such member, selling the new issue to the immediate family member, or (c) such person has an ability to control the allocation of the new issue. "Limited business broker/dealer" means any broker/dealer authorized to engage solely in the purchase or sale of investment company/variable contracts securities and/or direct participation program securities.

### *Broker/Dealer Owners*

d.    (i) a person listed, or required to be listed, in Schedule A—Direct Owners and Executive Officers—of a Form BD—Uniform Application for Broker-Dealer Registration—(other than with respect to a limited business broker/dealer), except persons identified by an ownership code of less than 10%; (ii) a person listed, or required to be listed, in Schedule B—Indirect Owners—of a Form BD (other than with respect to a limited business broker/dealer), except persons whose listing on Schedule B relates to an ownership interest in a person listed on Schedule A identified by an ownership code of less than 10%; (iii) a person listed, or required to be listed, in Schedule C—Amendments to Schedules A & B—of a Form BD that meets the criteria of item (i) or (ii) of this paragraph (d); or (iv) an immediate family member of a person specified in item (i), (ii) or (iii) of this paragraph (d).

e.    (i) a person that directly or indirectly owns 10% or more of a public reporting company listed, or required to be listed, in Schedule A—Direct Owners and Executive Officers—of a Form BD—Uniform Application for Broker-Dealer Registration—(other than a reporting company that is listed on a national securities exchange or is traded on the Nasdaq National Market, or other than with respect to a limited business broker/dealer); (ii) a person that directly or indirectly owns 25% or more of a public reporting company listed, or required to be listed, in Schedule B—Indirect Owners—of a Form BD (other than a reporting company that is listed on a national securities exchange or is traded on the Nasdaq National Market, or other than with respect to a limited business broker/dealer) or (iii) an immediate family member of a person specified in item (i) or (ii) of this paragraph (e).

f.    Any other affiliate of a broker/dealer described in paragraph (d) above.

### *Portfolio Managers*

g.    Any person (including a natural person as well as an entity) who has authority to buy or sell securities for a bank, savings and loan institution, insurance company, investment company, investment advisor, or collective investment account or is an immediate family member of such a person that materially supports, or receives material support from, such person. For purposes hereof "collective investment account" means any hedge fund, investment partnership, investment corporation, or any other collective investment vehicle that is engaged primarily in the purchase and/or sale of securities, but does not include a "family investment vehicle" (a legal entity that is beneficially owned solely by immediate family members) or an "investment club" (a group of friends, neighbors, business associates, or others that pool their money to invest in stock or other securities and are collectively responsible for making investment decisions).

### *Benefit Plans*

h.    An employee benefit plan sponsored by a domestic or foreign broker/dealer (other than a U.S. Employee Retirement Income Security Act benefit plan, qualified under Section 401(a) of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), not sponsored solely by a broker/dealer).

i.    A foreign employee benefit plan the participants of which include persons included in paragraphs (c)-(g) hereof if such persons' aggregate beneficial interest in such plan exceeds 10%.

Ex. A-2

*Investment Funds*

——— j.    A domestic or foreign account or investment fund in which any of the persons included in any of paragraphs (a)-(i) or in this paragraph (j) has a beneficial interest.[***]

## II. Non-Restricted Persons Based On Exemption

Even if an investor would otherwise be classified as a Restricted Person, an investor will not be so classified if the investor is qualified for one or more of the following exemptions. Please initial each category below that applies to the Investor.

——— I.    A foreign or domestic account or investment fund in which persons included in any of paragraphs (a)-(j) of Part I above have a beneficial interest (each, a "Restricted Participant"), but the Investor hereby represents and warrants that such Restricted Participants in the aggregate are allocated no more than 10% of any profits or losses attributable to new issues received by the Investor.

If this item is checked, the percentage share of profits or losses attributable to new issues to be received by Restricted Participants as of the date hereof is as follows: ___%. The Fund will rely on this percentage for one year following the date of this Exhibit A.

——— II.    A domestic or foreign bank, broker/dealer, investment adviser or other conduit acting for the account of a person who is not included in any of paragraphs (a)-(j) of Part I above.

——— III.    An investment company organized under the laws of a foreign jurisdiction that is listed on a foreign exchange or is authorized for sale to the public by a foreign regulatory authority and no person who owns more than 5% of the shares of the Investor is a person included in any of paragraphs (a)-(j) of Part I above.

——— IV.    An investment company registered as such under the U.S. Investment Company Act of 1940, as amended.

——— V.    A common trust fund, or similar fund as described in Section 3(a)(12)(A)(iii) of the U.S. Securities Exchange Act of 1934; provided that the fund has investments from 1,000 or more accounts and the fund does not limit its beneficial interests principally to trust accounts of persons included in any of paragraphs (a)-(j) of Part I above.

——— VI.    An insurance company general, separate, or investment account; provided that the account is funded by premiums from 1,000 or more policyholders, or, if a general account, the insurance company has 1,000 or more policyholders, and policyholders whose premiums fund the account are not limited principally to persons included in any of paragraphs (a)-(j) of Part I above, or, if a general account, policyholders are not limited principally to persons included in any of such paragraphs (a)-(j).

——— VII.    A publicly traded entity (other than a broker/dealer or affiliate thereof where such broker/dealer is authorized to engage in public offerings of new issues either as a selling group member or underwriter) that: (A) is listed on a national securities exchange; (B) is traded on the Nasdaq National Market; or (C) is a foreign issuer whose securities meet the quantitative designation criteria for listing on a national securities exchange or trading on the Nasdaq National Market as well as any subsidiary of such an entity, which subsidiary is not a restricted person under Part I above.

——— VIII.    A state or municipal government benefit plan subject to state and/or municipal regulation.

——— IX.    A tax exempt charitable organization under 501(c)(3) of the Code.

---

[***] The term "beneficial interest" means any economic interest, such as the right to share in gains or losses. The receipt of a management or performance based fee for operating a collective investment account, or other fees for acting in a fiduciary capacity, is not considered a beneficial interest in the account. However, deferred fees that are subsequently invested in or by reference to a collective investment account constitute a beneficial interest in such account.

Ex. A-3



_____ X.    A church plan under Section 414(e) of the Code.

### III. Pure Non-Restricted Persons

_____    Please initial here if none of paragraphs (a) to (j) of Part I or any of paragraphs (I) to (X) of Part II above, apply to the Investor.

Further, for any particular New Issue the following persons are Restricted Persons: (i) a finder in respect of the public offering of the New Issue or a person who has acted in a fiduciary capacity to the managing underwriter of any such offering, including, but not limited to, attorneys, accountants and financial consultants; or (ii) an immediate family member of a person specified in (i) who the person specified in (i) materially supports, or receives material support from. You are required to notify the Investment Manager in the event you act in such capacity in respect of any new issues. If the Fund determines it will invest in such new issue, the Fund may treat you as a Restricted Person for New Issues generally or for such New Issue (if purchased by the Fund).

The Investor understands that the Fund will be relying on the accuracy and completeness of the statements made and information provided herein and represents and warrants that such statements and information may be relied upon by the Fund, the Directors, the Investment Manager, their advisors, their broker/dealers and any entities or managers with which the Fund invests in complying with NASD Conduct Rule 2790.

The Fund will send each investor, including the Investor, a letter each 12 months hereafter to confirm that the information in this Exhibit A is current and accurate. The Investor need only respond to such communication if the information in this Exhibit A has changed.

The Investor acknowledges and agrees that, in the event that (A) the Fund determines, based upon information furnished to it by the Investor or otherwise available to it, that the Investor or any of the beneficial owners is ineligible under NASD rules to participate in profits from new issues or (B) the Investor fails or chooses not to supply all of the information requested in this paragraph or any other information requested by the Fund to determine whether the Investor would be a "Restricted Person," or the Investor responds inconsistently or inconclusively, such that the Fund cannot determine the status of the Investor under NASD Conduct Rule 2790 based on the information provided in this Exhibit A, **the Investor shall be deemed a "Restricted Person" who shall receive no or a limited allocation of any appreciation or depreciation in the Fund's assets from direct or indirect investments in New Issues.**

Ex. A-4

**APPENDIX I**

## SHARE EXCHANGE AGREEMENT

FOR USE BY INVESTORS IN BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT
STRATEGIES (OVERSEAS) LTD., THAT WISH TO EXCHANGE ALL OR A PORTION OF THEIR
SHARES THEREOF FOR SHARES OF THE FUND

This Agreement ("Agreement") is made as of _____, 2006, by and among _____
(the "Investor"), Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. (the High-Grade Fund") and
Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (the "Fund").

WHEREAS, the Investor is the legal and beneficial owner of shares of Bear Stearns High-Grade
Structured Credit Strategies (Overseas) Ltd. (the "High-Grade Fund" and the shares thereof, the "High-Grade Fund
Shares") and desires as of the date of the Investor's subscription in the Fund to which this Agreement relates (the
"Transaction Effective Date") to effect an in-kind redemption of a portion of its High-Grade Fund Shares and apply
the in-kind redemption proceeds thereof to the Subscription Amount payable in respect of Shares of the Fund.

NOW THEREFORE, in consideration of the premises, mutual covenants, representations, and
warranties contained herein, the parties hereto agree as follows:

(A)    _Definitions_. All capitalized terms used (including in the Recitals) but not otherwise defined herein
shall have the meanings ascribed to them in the Subscription Agreement to which this Agreement is attached.

(B)    _In-Kind Redemption/Subscription_. The Investor hereby requests the in-kind redemption of ALL
or _____% [INVESTOR SHOULD SPECIFY ONLY ONE] of its High-Grade Fund Shares as of the Transaction
Effective Date and to contribute the proceeds of such in-kind redemption to the Fund as of the Transaction Effective
Date in exchange for Shares of the Fund having a value equal to the value of the redeemed portion of the Investor's
High-Grade Fund Shares immediately prior to the effectiveness of such in-kind redemption. The Investor authorizes
the High-Grade Fund or the High-Grade Structured Credit Strategies Master Fund Ltd. (the "High-Grade Master
Fund") on its behalf to transfer assets representing the proceeds of such in-kind redemption to the Fund or to the
Master Fund, in accordance with the agreement reached pursuant to paragraph (C) below.

(C)    _Acknowledgement of In-Kind Redemption/Subscription_. The High-Grade Fund and the Fund
hereby acknowledge the transactions described in Section B above and shall agree separately to effect such
transactions in conjunction with an in-kind transfer of assets of the High-Grade Fund or High-Grade Master Fund to
the Fund or the Master Fund in an amount proportionate to the percentage of the Investor's redeemed High-Grade
Fund Shares.

(D)    _Payment of Incentive Fee_. The High-Grade Fund and the Fund hereby agree that no additional
fees shall be payable to the High-Grade Fund or Bear Stearns Asset Management Inc., the investment manager of
the High-Grade Fund (the "High-Grade Fund Investment Manager"), by the Investor in connection with the
transactions described herein, and the High-Grade Fund Investment Manager shall not be paid any incentive fee in
respect of the High-Grade Fund on the Transaction Effective Date in respect of the redeemed High-Grade Fund
Shares. However, all profits accrued to the Transaction Effective Date with respect to the High-Grade Fund shall be
included in determining the incentive fee payable to the High-Grade Fund Investment Manager in respect of the
Shares and any unrecouped losses of the High-Grade Fund Shares shall be maintained with respect to the Shares
following the in-kind redemption and subscription described herein.

(E)    Representations and Warranties Made by the Investor.

(1)    In connection with the in-kind redemption and subscription transaction described herein,
the Investor has completed a Subscription Agreement with respect to the Shares, and
hereby affirms that all representations, warranties, acknowledgements and covenants
made therein are true and correct as of the date hereof;

App. I-1



(2)     the Investor understands and acknowledges that none of the High-Grade Fund, the Fund, the Investment Manager or the High-Grade Fund Investment Manager accepts any responsibility whatsoever for the tax, regulatory, or other consequences of the transactions described in Section B above and that the Investor should consult with professional advisers as to legal, tax, accounting and related consequences of such transactions; and

(3)     the Investor has made true, accurate, and complete representations and warranties herein, and agrees to inform the Investment Manager, the High-Grade Fund, and the Fund should any of such representations and warranties in this Agreement no longer be true.

(F)     <u>Counterparts, Facsimile</u>.  This Agreement may be executed in one or more counterparts, each of which however shall constitute one document.  Facsimile signature pages shall have the same binding effect as original copies of such signature pages.

(G)     <u>Entire Agreement</u>.  This Agreement and the Subscription Agreement contain the entire agreement and understanding of the parties hereto relating to the transactions described herein and supersedes any prior agreements and understandings of the parties relating to such transactions.

(H)     <u>GOVERNING LAW</u>.  Notwithstanding the place where this Agreement may be executed by any of the parties hereto, the parties expressly agree that this Agreement, and all terms and provisions hereof, shall be governed by and construed in accordance with the internal laws of the State of New York (without conflicts of laws principles) applicable to agreements made and to be performed in New York.

App. I-2

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of _____, 2006.

BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES (OVERSEAS) LTD.
By: Bear Stearns Asset Management Inc., its investment manager

By: _____
    Name:
    Title:

BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE (OVERSEAS) LTD.
By: Bear Stearns Asset Management Inc., its investment manager

By: _____
    Name:
    Title:


_____
*Name of Investor*

By: _____
    Name:
    Title:

App. I-3