# ReedSmith
# Richards Butler

**ATTENDANCE NOTE**

Reed Smith Richards Butler LLP
Beaufort House
15 Botolph Street
London EC3A 7EE
Phone: +44 (0) 20 7247 6555
Fax: +44 (0) 20 7247 5091

| | |
|---|---|
| **AUTHOR:** | Tania M. Evans |
| **DATE:** | 4 December 2007 |
| **PHONE NUMBER:** | +44 (0)20 7816 3809 |
| **CLIENT/ MATTER NUMBER:** | 503440.20001 |
| **SUBJECT:** | **INVESTORS MEETING - BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE (OVERSEAS) LTD. (IN VOLUNTARY LIQUIDATION)** |

A meeting of investors was held at the St Bride Foundation, Bride Lane, Fleet Street, London, EC4Y 8EQ on 4 December 2007 from 10:00am to 10:45am.

Attendees:

- Marcus Rutherford and Tania Evans (Reed Smith Richards Butler).
- Simon Whicker (appointed joint liquidator ("JVL")), Kris Beighton (JVL), Russell Crumpler and John Milsom (appointed liquidator for US feeder fund) (KPMG).
- Nigel Meeson, Cayman. Counsel for liquidators (Conyers Dill & Pearman)
- Craig Deuchrass (Simonns Cooper Andrew)
- Two other unknown parties

### Opening by Kris Beighton of KPMG

There were no confidentiality agreements for the meeting. The meeting would be conducted in a fairly open way. The purpose was so that the JVLs can explain their role, the state of the companies, set out how they intend to approach investigations and have the opportunity to hear from the investors.

The structure of the meeting was:
- The work the JVLs are doing at the Master Fund level;
- Statements of assets and liabilities;
- 14 November meeting;
- Court supervision;

reedsmith.com

7EE. Reed Smith Richards Butler LLP is regulated by the Solicitors Regulation Authority. A list of the members of Reed Smith Richards Butler LLP, and their professional qualifications, is available at the registered office. The term partner is used to refer to a member of Reed Smith Richards Butler LLP or an employee of equivalent standing. olph Street, London EC3A
Reed Smith Richards Butler LLP is associated with Reed Smith LLP of Delaware, USA and the offices referred to below are offices of either Reed Smith Richards Butler LLP or Reed Smith LLP.

NEW YORK ◦ LONDON ◦ CHICAGO ◦ PARIS ◦ LOS ANGELES ◦ WASHINGTON, D.C. ◦ SAN FRANCISCO ◦ PHILADELPHIA ◦ PITTSBURGH ◦ OAKLAND
MUNICH ◦ ABU DHABI ◦ PRINCETON ◦ NORTHERN VIRGINIA ◦ WILMINGTON ◦ BIRMINGHAM ◦ DUBAI ◦ CENTURY CITY ◦ RICHMOND ◦ GREECE

191

LONDON-4538943.1-TMEVANS 4/12/07 4:48 Pl



- Investigations and the reporting process; and
- Questions investors may have.

**Structure**

The structure of the companies is unusual as it involves a Total Return Swap/Leverage Instrument Counterparty. Both the Offshore Feeder (Cayman Islands) and Domestic Feeder (Delaware) (together "Feeder Funds") received subscriptions from investors and those entities they entered into a Total Return Swap with the Leverage Instrument Counterparty, who is Barclays Bank. Barclays Bank then invested in the Master Fund. The shareholder in the Master Fund is therefore Barclays Bank rather than shareholders of the Feeder Funds.

**Chronology**

The chronology of events was reviewed and is set out in the hand-out provided at the meeting (this is attached).

The main work that the JVLs are doing involves tracking where there is a short-fall against the proof of debts. They are continuing to look into loss of value. They have sought Chapter 15 filings in the US because at the outset the assets were based in the US and they wanted to protect the assets to prevent a single creditor seizing the assets and taking an unfair advantage.



A creditors meeting of the Master Fund was held in the US on 31 October 2007. The Liquidation Committee is made up of residual members of the creditors group and there was a meeting on 28 November 2007.

**Statement of Assets/Liabilities**

This is set out in the hand-out.

There is $74k of redemptions receivable from the Feeder Funds to the Master Funds.

The JVLs would not go into too much detail regarding the receivables due to overpayment of redemption proceeds ($14,108,000) but stated that this essentially consisted of an overpayment to a single investor on redemption. They are pulling together a case against either the investor or the service provider and this will be the subject of litigation. The identity of the investor was not disclosed.

There was an estimated surplus in the Master Fund of around $50m. The liabilities are estimated at around $200m. KPMG stated that the Master Fund is hopelessly insolvent. In addition, due to the Total Return Swap, Barclays Bank ranks in priority to investors.

There was no proof of debt for liabilities, however, the majority of debt is for investment management fees payable to Bear Stearns Asset Management ("BSAM").

192

The liquidators were approached by BSAM who wanted them to be appointed liquidators to the Feeder Funds. The Feeder Funds have no liquid assets and the JVLs were not prepared to accept the appointment unless funds were made available to finance the investigations. BSAM put in $750,000. The JVLs pointed out that they do not have to report to BSAM for this money as it is for proper investigation into the Feeder Funds.

**Feeder Fund Appointment**

The JVLs are continuing to use BSAM to obtain historical information. They are also using PFPC, the administrators of the Feeder Fund.

**14 November Meeting**

The JVLs wrote to investors around 4 November 2007 saying that they would not stand in the way of the meeting of shareholders, however, their opinion was that the power of the directors ceased after their appointment.

Marcus asked whether, when appointed on 1 November 2007, the JVLs knew about the meeting on 14 November 2007 and if the liquidation occurred to prevent this. Kris Beighton responded that he did not think so. They were in discussions about whether they would in fact accept the appointment. Obtaining funding for investigation was the priority at the time.

**Court Supervision**

The JVLs think that since the Master Fund is under a Court supervised process, it is appropriate for liquidation of the Feeder Funds to be under Court supervision in the Cayman Islands. If the liquidators need to seek a remedy in the US they would then have the support of a Cayman Court. This hearing takes place on 14 December 2007.

**Investigations**

During the JVLs' investigations, the actions of the investment managers would be considered. This may lead onto complimentary actions e.g. against auditors, administrators, and/or the board of directors. At the Master Fund level the liquidators would focus on the underlying investments. At the Feeder Fund level a somewhat different approach is taken. They look at what the investors were told. Was there a clear and consistent message? On what basis did investors invest? Who was advising investors? Was it a Bear Stearns broker or independent broker? The JVLs will circulate questionnaires to all investors so that they could gain a better understanding of what happened.

Marcus raised the issue that our clients had regarding whether the investigations would be proper and transparent, as the whole process seems to be controlled and funded by BSAM. Mr Beighton said they had made it clear to BSAM that the money needed to be put into assets of the company and they were not therefore being "funded" by BSAM.

193

KPMG pointed out that liquidators have duties to creditors. Marcus requested to know who the creditors were. It is not right that the creditors are BSAM (due to management fees owed to them) who are the very people who might be subject to various actions. The JVLs emphasised that their appointment was an independent process. They could understand our concerns but they were trying to understand the issues and concerns and had conducted this open meeting as a way of doing this.

Marcus asked what happens when the $750,000 funds that BSAM provided to fund the investigations runs out? The JVLs said that the investors were not in a worse position for BSAM providing the money. If BSAM had not done so, the investors would not find out anything unless they funded the investigation. KPMG asked whether it was being suggested that KPMG are not acting independently. Marcus said that there was this perception given the connection with BSAM and there needed to be transparency in this process. KPMG pointed out that there are strict requirements for liquidators, including regarding conflicts, and asked whether we were suggesting that KPMG did not do this. In relation to Walkers, the liquidators said that independent Counsel was retained. This investors meeting was not required by statute, but they were doing it because they thought it important and were trying to make the process transparent.

Marcus said that he hoped going forward with the investigations it would be possible to have the clients involved. Mr Beighton understood our concerns.

In respect of formal reporting, Mr Beighton said that if the process ended up under Court supervision they would need to prepare a report to the Cayman Court and a copy of such a report would be provided to investors, in the interests of keeping the process transparent. They have also set up a website which makes key information available to investors.

**Next steps**

KPMG wanted to know whether investors wanted an Investors Committee formed. In traditional liquidations like this, unless there is a successful course of action, there is no money available. However, it would be useful to have a committee as a sounding-board and forum for discussing the investigations. KPMG wanted to hear if anyone was interested in serving on such a committee.

A question was asked regarding what the JVLs had done so far in terms of investigations. The response was that they were mainly concentrating on collecting the assets of the Master Fund ($50m) and there was still additional work that needed to be done to collect assets. Some investigation had been carried out in relation to the Investment Management Agreement. This was well-drafted by the attorneys for BSAM, who had placed the right sort of caveats in the agreement. The bar to bring an action against BSAM under this Agreement was high.

Investigations at the Feeder Fund level still needed to be done. The JVLs' concerns were in relation to subscriptions/redemptions and whether there were any companies who had redeemed and taken funds out prior to problems occurring. The question was asked whether a report of those findings would be placed on the website that had been set up. The findings would probably take the form of a report for investors or another meeting such as this. If there were any concerns from investors, the JVLs welcomed feedback to help them direct their investigations.

Marcus said that after investigation there is the possibility that some shareholders may commence a class action and would need information, such as that that the JVLs were reviewing. Would the JVLs be prepared to sub-contract the investigations down to shareholders? The response was that this had been done in other liquidations. There was no money here. There is the possibility that investors would have separate actions that the fund itself could not bring. The JVLs would be prepared to have discussions with investors about this, but it would depend on the detail and the circumstances whether they would do this.

Marcus raised the point that in order to bring claims, investors need access to the books and records and would the JVLs be willing to supply these. Any recoveries for the fund would benefit all. The JVLs would not recognise such a request from the current directors, as they have no power. However, they will listen to requests from investors for such information.

KPMG asked whether anyone would consider being on an Investors Committee. Marcus said he could not say at this stage whether our clients would do this. No other parties offered to be on the Committee.

The meeting closed at 10:45 am.

**Post-meeting discussions**

Marcus spoke with Simon Whicker, Kris Beighton, Russell Crumpler and John Milsom of KPMG once the meeting had closed. They said that the reason the directors were not invited to the meeting was because this was a meeting for investors. As liquidators they are required to act independently and are doing so. They are trying to do what they can to make the process transparent and open, such as by holding this meeting. They were happy to have a discussion with the directors on the telephone if the directors so wished.

**Other**

KPMG asked if we could identify the exact entities that were shareholders of the Feeder Fund. We were unable to do so and said we would let them know the names of the entities.

**Documents Supplied at Meeting**

- Hand-out for Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (in voluntary liquidation).

- Hand-out for Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. (in voluntary liquidation).

195