UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------X

In re:

BEAR STEARNS HIGH-GRADE STRUCTURED          Chapter 15 Case No. 07-12383
CREDIT STRATEGIES MASTER FUND, LTD.
(IN PROVISIONAL LIQUIDATION),                Civil Case No. 07-8730

Debtor in a Foreign Proceeding and
Appellant.

--------------------------------------X

In re:

BEAR STEARNS HIGH-GRADE STRUCTURED          Chapter 15 Case No. 07-12383
CREDIT STRATEGIES ENHANCED LEVERAGE
MASTER FUND, LTD.                            Civil Case No. 07-8730
(IN PROVISIONAL LIQUIDATION)

Debtor in a Foreign Proceeding and                    OPINION
Appellant.

--------------------------------------X

A P P E A R A N C E S:

Attorneys for Joint Official Liquidators

        AKIN GUMP STRAUSS HAUER & FELD LLP
        590 Madison Avenue
        New York, NY  10022-2524
        By:  Fred S. Hodara, Esq.

Attorneys for Amici Curiae

        GOODWIN PROCTER LLP
        53 State Street
        Boston, MA  02109
        By:  Daniel Martin Glosband, Esq.

        UNIVERSITY OF TEXAS
        727 E. Dean Keeton Street
        Austin, TX
        By:  Professor Jay L. Westbrook

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5|27|08

**Sweet, D.J.**

Simon Lovell Clayton Whicker and Kristen Beighton, the joint official liquidators and duly authorized foreign representatives (the "Foreign Representatives" or "Appellants") of Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (in Official Liquidation) ("High-Grade Fund") and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund, Ltd. (in Official Liquidation) ("Enhanced Fund"; collectively, the "Funds"), have appealed the September 5, 2007 order (the "Decision")[1] of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying their petitions (the "Petitions") for recognition of winding-up proceedings pending in the Cayman Court (the "Foreign Proceedings"), either as "foreign main proceedings" or as "foreign nonmain proceedings" pursuant to Chapter 15 of title 11 of the Bankruptcy Code.[2] Their appeal is unopposed by any party but by Amici Curiae. For the reasons set forth below, the Decision is affirmed.

This appeal involves failed overseas hedge funds, liquidation proceedings in the Cayman Islands, the standard for

---

[1] In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122 (Bankr. S.D.N.Y. 2007).
[2] All statutory references are to title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

1

recognition by the Bankruptcy Court of those proceedings, and in the felicitous phrase of the Appellants' Reply Brief to Briefs of the Amici ("ARB") a number of select dogs as described in Sir Arthur Conan Doyle's The Hound of the Baskervilles.   ARB 16. The field on which the issues raised play out is the recently enacted Chapter 15 of title 11 of the Bankruptcy Code.   While the temptation to simply affirm on the Decision, excellently crafted by the Honorable Burton R. Lifland, United States Bankruptcy Judge, is most powerful, some additional issues have been raised subsequent to the Decision.   It is hoped that resolution of these issues may provide some aid to navigation in these uncharted waters.   The process by which the financial problems of insolvent hedge funds are resolved appears to be of transcendent importance to the investment community and perhaps even to the society at large.

## Prior Proceedings

This Court has jurisdiction over appeals from final judgments, orders, and decrees of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).   On September 10, 2007, the Foreign Representatives timely filed their Notice of Appeal from the Decision pursuant to Rule 8002 of the Federal Rules of

Bankruptcy Procedure.    The appeal was heard and marked fully submitted on January 16, 2008.

## The Issue

Did the Bankruptcy Court err in determining that the Cayman Island proceedings were neither main nor nonmain proceedings under Chapter 15?

For the reasons stated in the Decision and described below, it is concluded that it did not.

## The Appellants

The Appellants are the Foreign Representatives of open-ended investment companies incorporated in the Cayman Islands as limited liability companies subject to Cayman Islands tax law.    Both of the Funds are registered as "exempted" companies under Cayman Islands law, which allows qualifying companies to trade in the Cayman Islands provided that they seek to further business outside of the Cayman Islands and not to compete with local businesses.

The Funds were established to attract sophisticated investors who understood and were willing to accept the risk of loss attendant to high income and capital appreciation investments and invested, inter alia, in: (i) investment-grade structured finance securities; (ii) asset-backed securities ("ABSs"); (iii) synthetic ABSs; (iv) mortgage-backed securities; (v) global structured asset securitizations; (vi) derivatives; (vii) options; (viii) swaps; (ix) swaptions; (x) futures; (xi) forward contracts; (xii) equity securities; and (xiii) currencies. With respect to the High-Grade Fund, such investors were "feeder funds."[3]  Feeder funds were the only investors in the High-Grade Fund which, like the Enhanced Fund, was a master fund.  There were three investors in High-Grade Fund, two of which were registered in the Cayman Islands.  The third investor was a U.S. entity.  There was only one investor in the Enhanced Fund, a large financial institution based in the United Kingdom. The creditor constituency of the Funds consists of less than twenty large international financial institutions.

---

[3] "The investment adviser of a domestic hedge fund often operates a related offshore hedge fund, either as a separate hedge fund or often by employing a 'master-feeder' structure that allows for the unified management of multiple pools of assets for investors in different taxable categories."  Securities and Exchange Commission, Staff Report: Implications of the Growth of Hedge Funds 9 (2003).  "The master fund is usually organized as a corporation, such as an international business company, under non-U.S. law.  It offers shares to one or more domestic feeder funds and one or more offshore corporate feeder funds, all of which share common investment strategies and objectives."  Id. at 9 n.26.

**The Respondents**

No creditor or investor has appeared in the proceeding to support or challenge the Decision. The record contains no explanation for the silence of these interests, though both the Appellants and the Amici speculate as to why these interests have not barked.

**The Amici**

The initial amici are Professor Jay L. Westbrook of the University of Texas School of Law, Daniel M. Glosband of Goodwin Procter LLP and Professor Kenneth N. Klee of the University of California at Los Angeles School of Law. Professor Westbrook and Mr. Glosband were part of the "small drafting group" that drafted the Model Law on Cross-Border Insolvency (the "Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL"). Professor Westbrook was the co-head of the United States delegation to the UNCITRAL conference and Mr. Glosband was the principal representative of the International Bar Association at those meetings. They then served as the primary draftsmen assisting the Department of State and Congress in drafting Chapter 15 of the Bankruptcy Code. Professor Klee, one of the draftsmen of

the 1978 Code, assisted with the drafting of Chapter 15 and its presentation to Congress.

Subsequent amici are Bart Schwartz, former Chief of the Criminal Division of the U.S. Attorney's Office for the Southern District of New York, and FTI Capital Advisors, LLC, a FINRA-registered broker/dealer and a wholly-owned subsidiary of the forensic accounting and financial investigations firm FTI Consulting, Inc. (collectively, the "Elected Representatives"). The Elected Representatives are the recently elected sole directors of the Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (the "Overseas Feeder Fund"), a feeder fund that had a contractual relationship with the Enhanced Fund's sole investor. The Elected Representatives seek to examine the affairs of the Overseas Feeder Fund and its counterparties, including the Enhanced Fund, in order to maximize any potential recovery for the shareholders of the Overseas Feeder Fund for their lost investments. The Elected Representatives support affirmance of the Decision, arguing that recognition of the Enhanced Fund's Cayman liquidation proceedings would harm the shareholders of the Overseas Feeder Fund.

## Prior Proceedings

6

In May 2007, due to the sub-prime mortgage crisis in the United States, the Funds suffered a significant devaluation of their asset portfolios. Many of the Funds' trading counterparties made margin calls that the Funds were unable to meet. Most of the Funds' secured creditors then accelerated repurchase rights or sold off assets that were the subject of repurchase agreements or in which the counterparties held security interests.

The Funds' boards of directors (the "Boards of Directors") filed winding-up petitions in the Cayman Islands (i) seeking orders that they be wound up under the provisions of the Companies Law (2007 Revision) of the Cayman Islands (the "Companies Law"), and (ii) applying for the appointment of the Foreign Representatives, subject to the supervision of the Cayman Court.

On July 31, 2007, the Cayman Court entered Orders (the "JPL Orders") appointing the Foreign Representatives as the joint provisional liquidators (the "JPLs") of the Funds. The JPL Orders authorized the JPLs "to do any acts or things considered by them to be necessary or desirable" for the protection of the assets and property of the Funds in connection

with the liquidation of the Funds and the winding up of their affairs.

On September 14, 2007, the Cayman Court entered orders converting the Foreign Proceedings from provisional to official liquidations and directing that the Funds be wound up under the Companies Law.   Pursuant to these orders, the JPLs became the joint official liquidators (the "JOLs").

On the day they initiated the Foreign Proceedings in the Cayman Islands, the Foreign Representatives filed petitions in the Bankruptcy Court seeking recognition of the Foreign Proceedings as foreign main proceedings, or, in the alternative, as foreign nonmain proceedings, under Chapter 15.   The petitions were unopposed by any party to the bankruptcy.   However, Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch International and Merrill Lynch Capital Services, Inc. did file a statement requesting that no choice of law determination be made regarding potential U.S. actions in conjunction with a conclusion as to the Funds' center of main interests.

Pursuant to section 1519 of the Bankruptcy Code, the Funds requested entry of an order (i) staying execution against the Funds' assets, (ii) prohibiting all persons from commencing

8

or continuing any litigation or any other proceeding, including, without limitation, appeals, mediation or any judicial, quasi judicial, administrative or regulatory action, proceeding or process whatsoever, or taking any other actions against or involving the Foreign Representatives (with respect to the Funds), the Funds and their property in the United States, and (iii) entrusting the administration or realization of the Funds to the Foreign Representatives. On August 1, 2007, the Bankruptcy Court entered a temporary restraining order pending a hearing on a preliminary injunction.

On August 9, 2007, the Bankruptcy Court held a hearing on the applications for a preliminary injunction and granted a preliminary injunction pending the disposition of the Funds' Chapter 15 petitions.

On September 5, 2007, the Bankruptcy Court filed the Decision denying recognition of the Foreign Proceedings as foreign main proceedings or foreign nonmain proceedings.

On September 10, 2007, the Foreign Representatives appealed the Bankruptcy Court's Decision. Because the Petitions were uncontested, there are no appellees.

On September 21, 2007, the Foreign Representatives filed an unopposed motion for a stay pending appeal pursuant to Bankruptcy Rule 8005. The Bankruptcy Court held a hearing on September 24, 2007, at which the Foreign Representatives presented additional evidence from the Foreign Representatives' continuing investigation.

On September 27, 2007, the Bankruptcy Court entered an order requiring that $4 million be maintained in U.S. bank accounts established with respect to each Foreign Debtor and continuing the preliminary injunction pending final disposition of this appeal.

This appeal was heard and marked fully submitted on January 16, 2008.

## The Decision

The Decision was authored by Judge Liflind who with the Amici participated in the drafting of the Model Law and Chapter 15. His description of the history of Chapter 15 and the elements of main recognition and nonmain recognition are authoritative and generally accepted by the Appellants. In

10

addition there is no substantial challenge to the facts set forth in the Decision.

The Bankruptcy Court denied main recognition on the grounds that each of the Funds' "center of main interests," as defined by Chapter 15, was actually the United States. This determination was based on the facts that the Funds' investment manager, Bear Stearns Asset Management, Inc. ("BSAM") is located in New York, the Administrator that runs the back-office operations of the Funds is in the United States, as are the Funds' books and records, and, prior to the commencement of the Foreign Proceeding, all (or virtually all) of the Funds' liquid assets were located in New York. 374 B.R. at 124-25, 130. The Bankruptcy Court also ruled that the Cayman Islands liquidation proceedings did not qualify as foreign nonmain proceedings, based on the conclusion that the Funds do not have an "establishment" in the Cayman Islands within the meaning of Chapter 15. Id. at 131-32.

The Appellants' principal contention is that the Decision failed to accede to the principles of comity and cooperation. Appellants also argue that the COMI presumption was erroneously interpreted and the facts found failed to

11

support the conclusions reached, namely, the denial of main and nonmain recognition.

## Chapter 15 and Its Operation

For the sake of continuity the history and operation of Chapter 15 is summarized below.

Section 1504 provides that a Chapter 15 case ancillary to a foreign proceeding is commenced by filing a petition. Section 1509 permits the foreign representative to file the petition directly with the Bankruptcy Court, without need for preliminary formalities, but conditions any other court access by the foreign representative on recognition. Sections 1504 and 1509 direct the foreign representative to file a petition for recognition of a foreign proceeding pursuant to section 1515. Section 1515 sets forth requirements for documentary or other evidence that demonstrates the existence of the foreign proceeding and the appointment of the foreign representative. Section 1516 permits the bankruptcy court to presume that the materials accompanying the petition demonstrate that the foreign proceeding and the foreign representative meet the basic definitional requirements.

12

Chapter 15 defines "recognition" as "the entry of an order granting recognition of a foreign main proceeding or foreign nonmain proceeding under this Chapter." § 1502(7). "'[F]oreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests." § 1502(4). "'[F]oreign nonmain proceeding' means a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." § 1502(5). Pursuant to section 1502(2), an "establishment" is "any place of operations where the debtor carries out a nontransitory economic activity." The Bankruptcy Code does not otherwise define center of nonmain interests.

The conditions for recognition of a foreign proceeding are applied in section 1517 which provides as follows:

> § 1517. Order granting recognition
> (a) Subject to [the public policy exception in] section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if--
> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
> (2) the foreign representative applying for recognition is a person or body; and
> (3) the petition meets the requirements of section 1515.
> (b) Such foreign proceeding shall be recognized
> (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or

13

> (2) as a foreign nonmain proceeding if the
> debtor has an establishment within the
> meaning of section 1502 in the foreign
> country where the proceeding is pending.

The relevant House Report states:

> The drafters of the Model Law understood
> that only a main proceeding or a nonmain
> proceeding meeting the standards of section
> 1502 (that is, one brought where the debtor
> has an establishment) were entitled to
> recognition under this section. The Model
> Law has been slightly modified to make this
> point clear by referring to the section 1502
> definition of main and nonmain proceedings,
> as well as to the general definition of a
> foreign proceeding in section 101(23). A
> petition under section 1515 must show that
> the proceeding is a main or a qualifying
> nonmain proceeding in order to obtain
> recognition under this section.

H.R. Rep. No. 109-31, at 114 (2005), as reprinted in 2005

U.S.C.C.A.N. 88, 173 (the "House Report").

With regard to the recognition of foreign main proceedings, the UNCITRAL Guide to Enactment of the Model Law on Cross-Border Insolvency (the "Guide"),[4] specifically counsels

---

[4] The Guide, available at

http://www.uncitral.org/pdf/english/texts/insolven/insolvency-e.pdf, was prepared by the United Nations Secretariat pursuant to the request of UNCITRAL made at the close of its thirteenth session, in 1997. "It is based on the deliberations and decisions of [UNCITRAL] at that session, when the Model Law was adopted, as well as considerations of the Working Group on Insolvency Law, which conducted the preparatory work." Guide, para. 10. "UNCITRAL considered that the Model Law would be a more effective tool for legislators if it were accompanied by background and explanatory information. While such information would primarily be directed to executive branches of Government and legislators preparing the necessary legislative revisions, it would also provide useful insight to other users of the text such as judges, practitioners and academics." Id. para. 9. The House Report directs that interpretation of Chapter 15 "will be aided by reference to the Guide and the

14

against consideration of factors other than the location of the debtor's COMI:

> It is not advisable to include more than one criterion for qualifying a foreign proceeding as a main proceeding and provide that on the basis of any of those criteria a proceeding could be deemed a main proceeding. An approach involving such a "multiple criteria" would raise the risk of competing claims from foreign proceedings for recognition as the main proceeding.

Guide, para. 127.    The House Report reflects the fact that section 1517 conforms to this guidance:

> This section closely tracks article 17 of the Model Law, with a few exceptions. The decisions to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandate by section 304(c) of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 102(23) and (24), are all that must be fulfilled to attain recognition.

House Report at 113.    The shift from the subjective, comity-based process of section 304(c) to Chapter 15's more rigid recognition standard is consistent with the general goals of the Model Law, as articulated by the Guide:

> Approaches based purely on the doctrine of comity or on exequatur do not provide the same degree of predictability and reliability as can be provided by specific legislation, such as the one contained in the Model Law, on judicial cooperation, recognition of foreign insolvency

---

Reports cited therein, which explain the reasons for the terms used and often cite their origins as well." House Report at 110.

15

> proceedings   and   access   for   foreign
> representatives to courts.

Guide, para. 16.

Section 1509 conditions further court access and
relief on the grant of recognition, and states:

> § 1509(b):   If the court grants recognition
> under section 1517, and subject to any
> limitations that the court may impose
> consistent with the policy of this Chapter--
>
> . . .
>
> (3): a court in the United States shall
> grant comity or cooperation to the foreign
> representative.

Finally, section 1506 establishes a presumption
that the debtor's registered office is the debtor's COMI:

> §   1516.         Presumptions   concerning
> recognition.
> (c) In the absence of evidence to the
> contrary, the debtor's registered office, or
> habitual residence in the case of an
> individual, is presumed to be the center of
> the debtor's main interests.

## The Standard of Review

The standard of review is set forth correctly in the
Appellants' Opening Brief and is set forth below.

16

When a district court reviews a decision of the Bankruptcy Court, it is authorized to "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. 8013. Findings of fact are reviewed for clear error. Id. Conclusions of law are reviewed de novo. In re Enron Corp., 419 F.3d 115, 124 (2d Cir. 2005); In re Worldcom, Inc., 357 B.R. 223, 226-27 (S.D.N.Y. 2006). A bankruptcy court's interpretation of the Bankruptcy Code is reviewed de novo. In re Caldor Corp., 303 F.3d 161, 166 (2d Cir. 2002).

## The Bankruptcy Court Correctly Held that Principles of Comity Do Not Figure in the Recognition Analysis

The Appellants appropriately note the principles of comity and cooperation emphasized in the Model Law, by commentators including Judge Lifland, and in pre-Chapter 15 decisions. Appellants' Opening Brief ("AOB") 15-20. Appellants argue that Chapter 15 "was enacted to foster comity," AOB 15, and the courts should therefore apply Chapter 15 "pragmatically, based on their understanding that recognition should be withheld only in very limited circumstances." AOB 3. This argument cannot overcome the plain language of Chapter 15.

17

Chapter 15 and the Model Law are designed to optimize disposition of international insolvencies by facilitating appropriate access to the court system of a host country (the United States, in the case of Chapter 15) by a representative of an insolvency proceeding pending in a foreign country. See § 1521; Model Law art. 21. If access is granted, then a wide range of relief from the host country's courts may be available. See § 1521; Model Law art. 21. "Recognition," the statutory parlance for such access, is distinct from the relief that may be granted post-recognition. Recognition turns on the strict application of objective criteria. See § 1517; Model Law art. 17. Conversely, relief is largely discretionary and turns on subjective factors that embody principles of comity. See, e.g., §§ 1507, 1521, 1525; Model Law art. 7, 21, 25. If recognition is refused, then the bankruptcy court is authorized to take any action necessary to prevent the U.S. courts from granting comity or cooperation to the foreign representatives. See § 1509(d).

Requiring recognition as a condition to nearly all court access and consequently as a condition to granting comity distinguishes Chapter 15 from its predecessor section 304. Prior to the enactment of Chapter 15, access to the United States courts by a foreign representative was not dependent on recognition; rather, all relief under section 304 was

discretionary and based on subjective, comity-influenced factors. See Decision, 374 B.R. at 126; see also In re Basis Yield Alpha Fund (Master), 381 B.R. 37, 46 (Bankr. S.D.N.Y. 2008); Jay Lawrence Westbrook, Locating the Eye of the Financial Storm, 32 Brooklyn J. Int'l L. 1019, 1024 (2007); Daniel Glosband, SPhinX Chapter 15 Opinion Misses the Mark, 25 Am. Bankr. Inst. J. 44, 45 (Dec./Jan. 2007). By establishing a simple, objective eligibility requirement for recognition, Chapter 15 promotes predictability and reliability. The considerations for post-recognition relief remain flexible and pragmatic in order to foster comity and cooperation in appropriate cases.

The objective criteria for recognition reflect the legislative decision by UNCITRAL and Congress that a foreign proceeding should not be entitled direct access to or assistance from the host country courts unless the debtor had a sufficient pre-petition economic presence in the country of the foreign proceeding. See House Report at 110; § 1509(b)(3). If the debtor does not have its center of main interests or at least an establishment in the country of the foreign proceedings, the bankruptcy court should not grant recognition and is not authorized to use its power to effectuate the purposes of the foreign proceeding. See House Report at 113; Guide paras. 73,

19

75, 128.    Implicitly, in such an instance the debtor's liquidation or reorganization should be taking place in a country other than the one in which the foreign proceeding was filed to be entitled to assistance from the United States.

Both the plain language and legislative history of Chapter 15 thus requires a factual determination with respect to recognition before principles of comity come into play.

Appellants argue that In re SPhinX, Ltd., 351 B.R. 103 (Bankr. S.D.N.Y. 2006) ("Sphinx I") and In re SPhinX, Ltd., 371 B.R. 10 (S.D.N.Y. 2007) ("Sphinx II") constitute contrary authority.

The review of Sphinx I was this Court's initial introduction to Chapter 15.   In Sphinx I, the bankruptcy court denied main recognition but granted nonmain recognition, and the latter determination was not appealed.   The facts found by the bankruptcy court were highly analogous to the facts founds here, although Sphinx also involved an improper purpose for seeking recognition as a main proceeding.[5]   In light of the authorities

---

[5] It is noted that the Elected Representatives, Amici, have contended that the Cayman Island proceedings are designed to frustrate claims against the Enhanced Fund and BSAM.   Brief of Elected Representatives, 11.   Whatever the motivation, the recognition result remains a factual issue appropriately determined by the Decision.

20

cited in this appeal, the COMI decision in Sphinx I and its affirmance are consistent with the Bankruptcy Court's Decision.

However, in Sphinx I, the bankruptcy court also opined that in light of the COMI determination, the granting of recognition of the nonmain proceedings was a "better choice." 351 B.R. at 122. This Court's affirmance emphasized flexibility and the conclusion that the recognition of a nonmain proceeding was a "pragmatic resolution", 371 B.R. at 19, noting the absence of opposition. Id. Here, Amici have provided opposition. And while the Decision here may be "at odds" with Sphinx II, Judge Lifland accurately noted that Sphinx II did not examine the statutory requirements for nonmain recognition. 374 B.R. at 131. In view of the fact that the nonmain determination was not appealed in Sphinx II, any language in that opinion bearing on the bankruptcy court's nonmain determination must be viewed as dicta. Even so, a remand on that issue in view of the Sphinx I record would have been appropriate. It must also be noted that there is no presumption applicable to the recognition determination with respect to a nonmain proceeding.

## The Decision Correctly Interpreted the COMI Presumption

21

After recounting the facts found, the Bankruptcy Court held that "the presumption that the COMI is the place of the Funds' registered offices has been rebutted by evidence to the contrary." 374 B.R. at 130.

The Appellants contend that Chapter 15 was intended to create a streamlined process for recognition but that the Bankruptcy Court's refusal to grant recognition and comity to the Foreign Proceedings frustrates Chapter 15's goals by turning what is intended to be a simple and streamlines legal proceeding into a complex, cumbersome, and time consuming process. AOB 4. The Foreign Representatives have suggested that part of the streamlining, the statutory presumption that the debtor's registered office is also its COMI is conclusive if not opposed by a party to the bankruptcy, regardless of evidence that the COMI is elsewhere. AOB 20.

However, section 1516(c) creates no more than a rebuttable evidentiary presumption, which may be rebutted notwithstanding a lack of party opposition. The Guide explains that:

> Article 16 establishes presumptions that allow the court to expedite the evidentiary process; at the same time they do not prevent, in accordance with the applicable procedural law, calling for or assessing other evidence if the conclusion suggested

22

by the presumption is called into question
**by the court** or an interested party.

Guide para. 122 (emphasis added). Thus, Judge Lifland was right
to reject Appellants' position that "this Court should accept
the proposition that the Foreign Proceedings are main
proceedings because the Petitioners say so and because no [one]
else says they aren't." 374 B.R. at 129. As Judge Learned Hand
commented a long time ago, "A judge is more than a moderator; he
is charged to see that the law is properly administered, and it
is a duty which he cannot discharge by remaining inert." United
States v. Marzano, 149 F.2d 923, 925 (2d Cir. 1945) (holding on
the facts that trial judge should not have questioned a witness
in the manner he did). See also In re Tri-Continental, 349 B.R.
627, 634 (E.D. Cal. 2006) ("The Guide . . . explains that the
concept is one of a default rule to be applied in the absence of
evidence that the debtor's main interests are centered in some
place different from the registered office."); House Report at
113 ("[T]he presumption that the place of the registered office
is also the center of the debtor's main interest is included for
speed and convenience of proof where there is no serious
controversy.").

Such a rebuttable presumption at no time relieves a
petitioner of its burden of proof/risk of non-persuasion. See
Fed. R. Evid. 301. It imposes "on the party against whom it is

23

directed the burden of going forward with evidence to rebut or meet the presumption" and only does so if the petitioner has established a prima facie case. Id.; County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979) (permissive inference or deduction allows, but does not require, trier of fact to infer or deduce elemental fact from proof of basic fact and places no burden on any kind on opponent). See also Tri-Continental, 349 B.R. at 635 ("[I]f the foreign proceeding is in the country of the registered office, and if there is evidence that the center of main interests might be elsewhere, then the foreign representative must prove that the center of main interests is in the same country as the registered office."); House Report at 112 ("Although sections 1515 and 1516 are designed to make recognition as simple and expedient as possible, the court may hear proof on any element stated. The ultimate burden as to each element is on the foreign representative . . . .").

In fact, Congress changed the relevant language of the Model Law by substituting rebuttal by "evidence" to the contrary for the Model Law's "proof" to the contrary in order to clarify this very issue. House Report at 112-13 ("The word 'proof' in subsection (3) has been changed to 'evidence' to make it clearer

24

using United States terminology that the ultimate burden is on the foreign representative.").

As such, although courts may presume that a debtor's COMI is in the place of its registered offices, this presumption may be rebutted by evidence to the contrary, even in the case of an unopposed petition for recognition.   Cf. Basis Yield, 381 B.R. 37 (denying unopposed summary judgment on the issue of COMI, regardless of presumption, because foreign representatives of debtor had failed to submit sufficient information for the court to make a determination).

## The Standard for the COMI Determination

As Judge Lifland noted, the "center of main interests" concept derives from the European Union Convention on Insolvency Proceedings ("EU Convention"), already in the process of adoption when the Model Law was drafted.   374 B.R. at 129.   The regulation adopting the EU Convention explains that "center of main interests" means "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties."   Council Reg. (EC) No. 1346/2000 ¶ 13.   An early bankruptcy court decision that addressed the determination of COMI specifically discusses the

EU Regulation language and properly equates it to the United States' concept of "principal place of business." Tri-Continental, 349 B.R. at 629; see also Basis Yield, 381 B.R. at 47-48; Decision, 374 B.R. at 129. In Tri-Continental, the court found that debtor's principal place of business was in St. Vincent and the Grenadines ("SVG") and recognized an SVG liquidation as a foreign main proceeding. 349 B.R. at 640. All of the debtor's twenty employees, its lead underwriter, and its principal worked in the SVG and its only office was there. Id. at 630.

Noting that the Bankruptcy Code does not state the type of evidence relevant to the COMI determination, the Decision relied on Sphinx I for a list of potentially relevant factors, including:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

374 B.R. at 128 (citing Sphinx I, 351 B.R. at 117). See also In re Ernst & Young, Inc., 383 B.R. 773, 779 (Bankr. D. Colo. 2008) (citing Decision for relevant factors); Basis Yield, 381 B.R. at

26

47 (citing Sphinx I for relevant factors); In re Loy, 380 B.R. 154, 162 (Bankr. E.D. Va. 2007) (same).

The Decision also cites the Eurofood decision by the European Court of Justice ("ECJ") for the propositions that COMI is analogous to "principal place of business" and that the COMI presumption may be overcome, particularly in the case of a "letterbox company." See 374 B.R. at 129 (citing Case C-341/04, In re Eurofood IFSC Ltd., 2006 E.C.R. I-3813 ("Eurofood"), paras. 34-35).

Eurofood resolved a tug of war between Irish and Italian courts over insolvency proceedings of Eurofood IFSC Ltd. by ruling on questions submitted by the Irish Supreme Court. Eurofood, paras. 22-24. The Eurofood decision was premised on the stipulated fact that the debtor was both registered and conducting its business in Ireland:

> The referring court asks how much relative weight should be given as between, on the one hand, the fact that the subsidiary regularly administers its interests, in a manner ascertainable by third parties and in respect for its own corporate identity, in the Member State where its registered office is situated and, on the other hand, the fact that the parent company is in a position, by virtue of its shareholding and power to appoint directors, to control the policy of the subsidiary.

27

Eurofood, para. 27. The ECJ held that the fact a company's economic choices are or can be controlled by a parent company in another state is not enough to rebut the COMI presumption.

Appellants argue that Eurofood supports their arguments (1) that a recognition decision should be influenced by principles of comity and (2) in favor of a strong presumption that a debtor's COMI is in its place of incorporation. AOB 24-25. However, Eurofood more or less amounts to another non-barking dog, as Appellants concede that the opinion itself states few relevant facts and the development of the facts critical to its COMI decision have been gleaned from commentary. ARB 14 n.16. In any event, the Eurofood decision is not inconsistent with the Bankruptcy Court's reading of the COMI presumption or its analysis of the role of comity in the recognition process.

Appellants also cite In re Daisytek-ISA Ltd., [2003] All E.R. (D) 312 (Ch. May 16, 2003) ("Daisytek"), an English case that opened main proceedings for a French and German-registered subsidiaries of Daisytek. That court held that the COMI for all concerned companies was the U.K., because "the majority of the administration" of the companies was conducted

28

from their head offices in England.  Like Eurofood, Daisytek is
consistent with the Bankruptcy Court's holding.

## The Facts Found Support the Denial of Main Recognition

        The factual findings of the court below will not be
overturned unless they are "clearly erroneous."  Fed. R. Bankr.
Proc. 8013.  As the Bankruptcy Court found, the pleadings and
facts elicited at hearings before the Bankruptcy Court place the
conduct of the Funds' business, their assets, management company
and sponsors in New York.  374 B.R. at 130.   There is no
substantial challenge to the factual findings set forth in the
Decision.  The Bankruptcy Court found:

> There are no employees or managers in the
> Cayman Islands, the investment manager for
> the Funds is located in New York, the
> Administrator that runs the back office
> operations of the Funds is in the United
> States along with the Funds' books and
> records and prior to the commencement of the
> Foreign Proceeding, all of the Funds' liquid
> assets were located in [the] United States.
> Although two of the three investors in the
> High-Grade Fund are also registered Cayman
> Islands companies, Mr. Whicker, one of the
> JPLs, testified that both are Bear Stearns
> entities which appear to have the same
> minimum Cayman Islands profile as do the
> Funds.   The sole investor in the Enhanced
> Fund is a U.K. entity. . . .   The investor
> registries are maintained and located in the
> Republic of Ireland; accounts receivables
> are located throughout Europe and the United
> States; counterparties to master repurchase
> and swap agreements are based both inside

29

> and outside the United States but none are
> claimed to be in the Cayman Islands.
> Moreover, there apparently exists the
> possibility that prepetition transactions
> conducted in the United States may be
> avoidable under U.S. law.

Id. (footnotes omitted).

In an effort to demonstrate the Funds' "substantial
connections" to the Cayman Islands, Appellants reassert a number
of arguments rejected by the Bankruptcy Court.

Appellants argue that most of the Funds' remaining
liquid assets are in bank accounts in the Cayman Islands.
However, prior to filing the Chapter 15 Petition, all of the
Funds' funds were maintained in its accounts with its prime
broker in the United States. ROA-2, para. 9. Post-filing, some
millions of dollars in cash were directed to accounts in the
Cayman Islands instead of their usual destination in the United
States. 374 B.R. at 131; ROA-9 at 22:5-22; ROA 12 at 17-19.

Appellants point out that two of the directors of the
funds resided in the Cayman Islands. 374 B.R. at 130 n.9.
However, these directors have not been shown to have had any
substantial involvement in the business of the Funds.

Appellants also argue that the Funds' investors and creditors knew or should have reasonably known they were dealing with Cayman Islands incorporated entities. The funds were "exempted" companies, a status under Cayman Islands law that severely limits their activities in the Islands. 374 B.R. at 131 (citing Companies Law (2004 Revision) of the Cayman Islands § 193). No evidence has been offered to suggest that any creditor or investor (aside from other Bear Stearns entities) of the funds knew or had reason to know of their Cayman Islands incorporation or of any location of the funds other than at the New York offices of Bear Stearns Asset Management.

It is also alleged that as Cayman Island incorporated companies, the Funds are subject to Cayman Islands tax law and "required" to be wound up in the Cayman Islands and that upon appointment of the joint provisional liquidators, the powers of the boards of directors ceased and the control of the Funds was transferred to Cayman Islands. AOB 12. These allegations do not constitute substantive economic activity in the Cayman Islands.

Finally, Appellants assert that the Funds' pre-filing attorneys are in the Cayman Islands, the funds' pre-filing auditors performed some auditing work in the Cayman Islands, and

31

certain investments made by the Funds were constituted under Cayman Islands law. Assuming the relevance of these facts to the COMI analysis, they are outweighed by the facts found by the Bankruptcy Court.

The Bankruptcy Court correctly held that the Section 1516(c) presumption arising from incorporation has been rebutted by unchallenged facts and properly concluded that the Funds' COMI is New York. Appellants' emphasis on the fact that their petition was unopposed is unavailing. The lack of objection to the petition may result from any number of considerations, unknown to the courts but subject to any assumption. That absence does not relieve the bankruptcy court of its duty to apply the statute as written.

## Appellants Have Failed to Allege Facts
## Establishing Nonmain Recognition

A foreign nonmain proceeding is "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." § 1502(5). An "establishment" is "any place of operations where the debtor carries out nontransitory economic activity." § 1502(2).

32

Appellants have argued that the Funds' connections to the Cayman Islands are at least sufficient to constitute an "establishment" under § 1502. The existence of an "establishment" is essentially a factual question, with no presumption in its favor.

As the Bankruptcy Court found, Appellants have failed to put forward facts establishing that the Funds had a "place of operations" that carried out "nontransitory economic activity" in the Cayman Islands. Auditing activities and preparation of incorporation papers performed by a third party do not in plain language terms constitute "operations" or "economic activity" by the Funds. Nor does the alleged review of insider transactions fall within the ordinary meaning of "economic activity."

Moreover, at the time of the petition there were no assets of the Funds in the Cayman Islands. In general, section 1521(c) of the Bankruptcy Code limits the scope of relief available in a nonmain proceeding to relief related to assets located in the nonmain jurisdiction or closely connected thereto, while a plenary bankruptcy proceeding where the Funds are located would control the Funds' principal assets. The fact that the Funds had no assets in the Cayman Islands at the time

33

of filing supports the conclusion that nonmain recognition would be inappropriate.

## The Post-Hearing Evidence Submitted by Appellants Is Inadmissible

Post-hearing evidence was submitted that two local directors were required to approve certain transactions with the Funds, AOB 15, 30 n.21, 34, but no evidence was adduced that this requirement was fulfilled in fact or amounted to more than a pro forma technicality. In any event, the affidavit containing this activity was submitted after the Decision issued and is not part of the record. AOB 14-15.

The record on appeal is governed by Bankruptcy Rule 8006. "[T]he touchstone for the designation of matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the order or judgment appealed from." In re Ames Dept. Stores, Inc., 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005). Subject to a narrow exception not applicable here, see In re Food Fair, Inc., 15 B.R. 569 (Bankr. S.D.N.Y. 1981), "if an item was not considered by the court, it should be stricken from the record on appeal." Id. at 521. See also In re Yepremian, 116 F.3d 1295, 1297 (9th Cir. 1997) (holding that deposition and declaration taken after

34

bankruptcy court's grant of summary judgment were not part of record on appeal); In re Tiana Queen Motel, Inc., 34 B.R. 357, 361 (S.D.N.Y. 1983) (holding that a district court, "sitting as an appellate court . . . should not receive into evidence material that was not before the bankruptcy court").

Thus, the new evidence presented by Appellants is not appropriately part of the record on appeal. Even if the Court were to consider this new evidence, it would not affect the outcome of this case.

## Conclusion

For the reasons set forth above, the Decision is affirmed.

So ordered.

New York, N.Y.
May 2 2 , 2008

ROBERT W. SWEET
U.S.D.J.

35